## 39766. JACKSON v. GERSHON.

SMITH, Justice.

Certiorari was granted to review the decision of the Court of Appeals affirming a grant of summary judgment for appellee physician in this medical malpractice action. We reverse.

Appellant Irma Jackson was admitted to Paulding County Memorial Hospital on September 11, 1980, complaining of severe lower back pain and blood in her urine. Appellee Gershon, a urologist, first saw her on September 13 and recommended conducting a cystoscopy, a relatively simple procedure in which a "lighted telescope" is inserted through the urethra[1] into the bladder for inspection of the bladder's interior. Appellant agreed to undergo a cystoscopy, and an x-ray of appellant's urinary tract was taken that day. Two days later, on September 15, Dr. Gershon for the first time reviewed this x-ray and noted the presence of three small non-obstructive kidney stones in appellant's left kidney, as well as an obstruction, of unknown origin, in appellant's right ureter.[2]

A cystoscopy was performed on September 15. Dr. Gershon found nothing unusual inside appellant's bladder. After completing the normal cystoscopy procedure, and without consulting appellant or conducting further tests or x-rays, he inserted a "stone basket" device up appellant's right ureter in an attempt to clear up the blockage there. This procedure caused a break in the ureteral wall,[3] which in turn necessitated an extensive operation to repair damage to appellant's ureter and reimplant the ureter in her bladder.

---

[1] The urethra is a canal which carries urine from the bladder to the exterior of the body.

[2] The ureter is a tube, about 16 inches long, which connects the kidneys and bladder.

[3] It is unclear whether the "stone basket" itself or a catheter later inserted by Dr. Gershon actually punctured appellant's ureter.

Following the operation, appellant continued to experience extreme pain in her right side. She consulted a second physician, Dr. Roper, who operated on appellant in February 1981 to remove extensive scar tissue which had formed around appellant's right ureter as a result of the first operation. Dr. Roper also reimplanted appellant's right ureter in the bladder in order to correct a faulty reimplantation by Dr. Gershon. This action was necessary, testified Dr. Roper, to prevent scar tissue from reforming around the ureter and to improve drainage through it.

Appellant sued Dr. Gershon for malpractice in the performance of the cystoscopy, alleging negligence and breach of an implied contract to perform skilled professional services. Dr. Gershon moved for summary judgment, presenting his own affidavit and deposition as expert testimony to the effect that his treatment of appellant comported with accepted medical standards and was, therefore, non-negligent. Appellant responded with the deposition of Dr. Roper stating that, while he would have approached appellant's problem more conservatively, Dr. Gershon's treatment was within the standards of adequate medical care. More specifically, Dr. Roper testified that he personally disapproved of "diagnostic" use of the stone basket device and would not have employed the procedure on appellant without first conducting further tests. Based on this testimony, the trial court granted summary judgment for Dr. Gershon, and the Court of Appeals affirmed. *Jackson v. Gershon,* 165 Ga. App. 492 (300 SE2d 335) (1983).

Appellant's expert testimony raised a factual issue as to Dr. Gershon's alleged negligence in (1) proceeding with the "stone basket" for "diagnostic" use without first conducting further tests to determine whether, in fact, there was a kidney stone blocking appellant's right ureter; and (2) performing surgery on appellant's ureter and bladder without first attempting to intubate the ureter.

It is true, as stated by the Court of Appeals in its opinion, that to avoid summary judgment a plaintiff in a malpractice action must counter a defendant's expert affidavit with a contrary expert opinion. See *Howard v. Walker,* 242 Ga. 406, 408 (249 SE2d 45) (1978). Appellant has met this burden. Dr. Roper's deposition, while not unequivocal, was "sufficient to authorize the jury to find that the defendant had in fact failed to use 'due care, skill and diligence' in treating the plaintiff." *Lawrence v. Gardner,* 154 Ga. App. 722, 724 (270 SE2d 9) (1980). Dr. Roper stated that the surgery performed by Gershon caused massive scar tissue to surround appellant's right ureter, thus constricting the flow of fluids through it and causing pain; that the ureter had been implanted in appellant's bladder by

Dr. Gershon in an unusual place, necessitating removal and reimplantation in the second operation; that standard practice dictates that an x-ray of the bladder be done prior to performing a cystoscopy; that he would not use a "stone basket" unless he was certain that a kidney stone was blocking the ureter, as use of a "stone basket" device causes considerable trauma to the ureteral wall and runs a risk of perforating the ureter; that it is consistent with standard practice to conduct a specialized x-ray test called a retrograde pylogram to search for kidney stones in the affected area prior to using a stone basket, and that a majority of urologists would proceed in this manner. In addition, on cross-examination by Gershon's attorney, Dr. Roper was asked whether he felt Dr. Gershon had exercised ordinary care in conducting the procedures that resulted in the perforation of appellant's right ureter. Dr. Roper indicated that he could not answer the question affirmatively because, in his opinion, a doctor exercising ordinary care would have "attempted to insert a catheter once again up the lumen of the ureter which would have been, I feel, the next step." When asked if Dr. Gershon's decision to operate was consistent with good medical practice, Dr. Roper reiterated that a doctor in Gershon's position should have tried to reintubate the ureter by inserting a catheter from below before proceeding to full-blown surgery.

None of the conservative, preventative measures described by appellant's expert were attempted by Dr. Gershon in this case. Appellant's evidence created a factual question as to whether Dr. Gershon's ill-fated foray into her ureter was medically necessary, and this is all that was required to avoid summary judgment on the issue of Dr. Gershon's alleged negligence in treating appellant. It is true that appellant's expert never accused Gershon of negligence. But when stripped of the magic words "in accordance with standard medical practice," "standard practice," and the like, Dr. Roper's testimony showed that he had grave doubts about whether Gershon's surgery was conducted properly. Magic words alone, no matter how often repeated, do not make a fact. Rather the facts in the record must be sufficient to meet the legal standard embodied in the magic words. It is asking too much of an expert witness to expect him to state point-blank about a professional colleague, "He was negligent." See Kelner, The Silent Doctors—The Conspiracy of Silence, 5 U. Rich. L. Rev. 119 (1970). "Although none of the nonparty physicians specifically opined that the defendant here was negligent, such explicit conclusory pronouncements out of the mouths of those clothed with the mantle of evidentiary expertise are not essential." *Lawrence v. Gardner,* supra at 724.

When considered in the context of a motion for summary

judgment, Dr. Roper's testimony raised material issues of fact to be resolved by a jury. As stated in *Lawrence v. Gardner,* supra at 724: "Here there was expert testimony elicited on cross examination . . . which was not inconsistent with plaintiff's contention that defendant failed to exercise the requisite professional care, skill and diligence. 'Summary judgments should only be granted where, construing *all* inferences against the movant, it yet appears without dispute that the case can have but a single outcome.' (Emphasis supplied.)" Thus the trial court's grant of summary judgment was erroneous.

*Judgment reversed. All the Justices concur, except Marshall, P. J., Clarke and Bell, JJ., who dissent.*

DECIDED OCTOBER 25, 1983.

*Carl P. Fredericks,* for appellant.
*George W. Hart, Lawrie E. Demorest,* for appellee.