## 42042. MESSEX v. LYNCH.
### (336 SE2d 755)

SMITH, Justice.

The appellant, Joyce Messex, developed a lump on her neck and her physician referred her to the appellee, Lawrence J. Lynch, M.D., to have the lump surgically excised so that it could be checked for malignancy. The appellee performed a posterior cervical node biopsy upon the appellant. Thereafter the appellant brought an action for

malpractice alleging that during the course of the surgery that the appellee negligently severed her right accessory nerve in her neck causing her permanent injury. The appellee denied any negligence on his part, and moved for summary judgment, supporting his motion with his own affidavit. The appellant filed her own affidavit in which she stated that when appellee operated on her that the area was not fully anesthetized and that she felt "a sharp, deep pain" and that she "involuntarily jerked upward." After the surgery her right arm was "numb and partially disabled." She also included the affidavit of her physician. The trial court granted the motion, and on appeal the Court of Appeals affirmed. *Messex v. Lynch*, 173 Ga. App. 338 (326 SE2d 492) (1985). We granted the appellant's writ of certiorari and we reverse.

"[T]o avoid summary judgment a plaintiff in a malpractice action must counter a defendant's expert affidavit with a contrary expert opinion. See *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45) (1978)." *Jackson v. Gershon*, 251 Ga. 577, 578 (308 SE2d 164) (1983). Here the appellee filed an affidavit in support of his motion for summary judgment in which he stated that he performed the "posterior cervical node biopsy in accordance with standard surgical practice and in so doing I exercised the degree of care and skill that is generally employed by surgeons under similar circumstances and conditions. . . . The fact that the spinal accessory nerve is injured or damaged does not mean that the surgeon failed to exercise the degree of care and skill that is ordinarily employed by members of the medical profession under similar circumstances." In answer to interrogatories the appellee stated that "[t]he operation proceeded smoothly and without any known complication or unusual occurrence." He answered that he did not contend that some other person caused the injuries, and that "[i]t is not customary for accessory nerve damage to occur during a posterior cervical node biopsy; however, injury or damage to the spinal accessory nerve during a posterior cervical node biopsy does occur and is a recognized and accepted complication associated with this type of surgical procedure."

The plaintiff's expert affidavit which stated that it was based on his personal knowledge and belief gave his medical training and experience and indicated that he had performed cervical lymph node biopsies and that he was familiar with the surgical procedures and with the standards of skill and care for surgeons throughout the medical community in performing the surgery. He stated, "In my professional opinion, . . . a cervical node biopsy can be performed without damage to the spinal accessory nerve if the surgeon uses a reasonable degree of surgical care and skill in the procedure. In my professional opinion, a reasonable degree of surgical care and skill would require a surgeon who was performing a cervical lymph node biopsy to *avoid* damaging

a branch of the spinal accessory nerve, . . . ." (Emphasis in original.) He further stated that "injury or damage to the spinal accessory nerve during a cervical lymph node biopsy is not a common occurrence; and when in these circumstances injury does occur to the spinal accessory nerve, usually such injury occurs because the surgeon failed to use that reasonable degree of care and skill that is ordinarily employed by the medical profession under similar circumstances."

"The party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence." *Holland v, Sanfax Corporation*, 106 Ga. App. 1, 5 (126 SE2d 442) (1962). "[T]he facts in the record [were] sufficient to meet the legal standard embodied in the magic words. It is asking too much of an expert witness to expect him to state point-blank about a professional colleague, 'He was negligent.' [Cit.]" *Jackson v. Gershon*, 251 Ga., supra at 579. The plaintiff's expert created a factual question as to whether the damage was caused by the appellee's alleged negligence and that is all that was required. Furthermore, summary judgments should not be granted unless it appears, without dispute, that the case could have but a single outcome after all inferences have been construed against the movant. *Gershon*, supra at 580. It is not that the magic words are spoken, but what is said and done irrespective of the magic words.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 27, 1985.

*Stubbs & Associates, M. Francis Stubbs,* for appellant.
*Oliver, Maner & Gray, William P. Franklin, Jr., Thomas A. Withers,* for appellee.