71746. BUSHEY et al. v. ATLANTA EMERGENCY GROUP et al.
(348 SE2d 98)

BEASLEY, Judge.

On January 25, 1983, Dr. Davis performed a tonsillectomy and adenoidectomy on five-year-old Donald Bushey at Clayton General Hospital. On the seventh post-operative day, the child suffered a post-tonsillectomy hemorrhage and was rushed by his parents to the hospital's emergency room at approximately 1:00 a.m. The child was in respiratory arrest evidenced by bleeding from the mouth, cyanosis, dilated pupils, unresponsiveness and lack of discernible blood pressure. Dr. Heilman, emergency physician on duty for Atlanta Emergency Group, was in charge of beginning resuscitative efforts. At approximately 1:22 a.m., the child's surgeon arrived at the emergency room and took charge of the patient. An anesthesiologist intubated him at approximately 1:40 a.m. By then the child had gone into cardiac arrest and was not revived until 1:52 a.m. Post-arrest complications included loss of 80% of fine motor control, loss of 20% of gross motor control, and cortical blindness.

On January 23, 1985, the child's father, as next friend and individually, filed suit against Atlanta Emergency Group, P. C., Dr. Heilman, Dr. Davis, and Clayton General Hospital. He alleged in part that if he had been informed of the attendant risks prior to the surgery it would not have been consented to, and that all the defendants and their agents failed to properly attend, care for, treat or use the requisite degree of skill in their treatment of the child, which directly and proximately resulted in his severe and permanent injury.

Defendants Davis, Heilman and Atlanta Emergency Group moved for summary judgment and in support submitted the affidavits of the two defendant physicians. Plaintiff filed affidavits of two other physicians in response and included the hospital records. The depositions of defendant doctors were submitted to record at the hearing and the court considered them also. It granted summary judgment pursuant to OCGA §§ 9-11-56 and 9-11-54 (b), having concluded that the affidavits of the two physicians submitted by plaintiff in opposition to the motions were insufficient as a matter of law to create a genuine issue of material fact. The plaintiff father urges that the trial court erred in finding his expert affidavits insufficient to defeat the motions for summary judgment.

Since this is a medical malpractice case, it is the type of case in which "only opinions of experts are admissible," . . . "at least one expert's opinion is mandatory," and "the plaintiff must produce ex-

pert opinion testimony in order to be entitled to have the case considered by a jury." *Howard v. Walker*, 242 Ga. 406, 407 (249 SE2d 45) (1978). Consequently, when the defendant produces expert opinion evidence in his favor on a motion for summary judgment, even though he need not do so at trial, " '[t]o avoid summary judgment a plaintiff in a malpractice action must counter a defendant's expert affidavit with a contrary expert opinion.' See *Howard v. Walker, . . .*" *Messex v. Lynch*, 255 Ga. 208, 209 (336 SE2d 755) (1985). Otherwise there is no genuine issue to be tried because the *only* expert evidence in the record as to negligence is to the effect that there was no negligence.

The fact that emergency treatment of the child resulted, in part, unfavorably, does not raise a presumption of want of proper care, skill, or diligence on the part of the treating physicians. See *Franklin v. Elmer*, 174 Ga. App. 839, 841-842 (1) (332 SE2d 314) (1985). The court as well as the eventual jury must have a standard which is to be used in measuring the acts of the physician in determining whether or not he exercised a reasonable degree of care and skill; the proper standard of measurement must be established by the testimony of those expert in the field of medicine. See *Pilgrim v. Landham*, 63 Ga. App. 451, 455 (11 SE2d 420) (1940).

Here the affidavits of the two defendant physicians recited their professional backgrounds and specifically chronicled their individual involvement with the patient, from their first seeing him until they ceased treating him. Each stated generally what he had done. Also, each stated his opinion that he followed standard procedures used by the medical profession generally under similar conditions and like surrounding circumstances and that he possessed and exercised that degree of care and skill ordinarily exercised by the medical profession generally. The detailed and specific course of resuscitation undertaken by Dr. Heilman was described in his deposition, and the specifics of Dr. Davis' course of treatment were likewise in the record, thus explaining precisely what each had done.

Plaintiff's expert Kowtoniuk stated that he reviewed both depositions as well as the defendant hospital's records and that: "Based on the history, the condition of Donald Bushey, Jr. as reflected in the hospital records upon arrival at Clayton General Hospital and based on the various recordations in the hospital records themselves, it is my opinion that the actions of Dr. M. E. Davis constituted care which fell below the standard in the medical community generally."

Plaintiff's other expert, Vandeleuv, stated that he reviewed Heilman's deposition and affidavit and Davis' deposition and the hospital records. His opinion was verbatim that of Dr. Kowtoniuk except that it related to Heilman.

The question is whether this evidence sufficiently countered the expert opinion offered by defendants so as to create a genuine issue of

fact to be resolved by a jury. Was this evidence " 'sufficient to authorize the jury to find that the defendant(s) had in fact failed to use "due care, skill and diligence" in treating the plaintiff[?]' *Lawrence v. Gardner*, 154 Ga. App. 722, 724 (270 SE2d 9) (1980)." *Jackson v. Gershon*, 251 Ga. 577, 578 (308 SE2d 164) (1983). As can be seen, the problem is not the absence of the "magic words"; they are there, and that is all that is there. There are no facts to back them up. Plaintiff's experts looked at the evidence and simply drew legal conclusions.

That is what makes this case different from *Jackson*, supra. There, while the "magic words" were absent, the plaintiff's expert had described where and in what regard defendants had gone wrong: "None of the conservative, preventative measures described by appellant's expert were attempted by Dr. Gershon . . ." Id. at 579. This created a factual question as to whether what the defendant did was medically necessary, "and this is all that was required to avoid summary judgment on the issue of Dr. Gershon's alleged negligence in treating appellant." Thus it is established that "the facts in the record must be sufficient to meet the legal standard embodied in the magic words." Id. at 579.

Here there are no countering facts. The opinions were merely "explicit conclusory pronoucements." Id. at 579, quoting from *Lawrence v. Gardner*, 154 Ga. App. 722, 724 (270 SE2d 9) (1980). Thus it also differs from the evidence, i.e., the expert's affidavit, in *Messex v. Lynch*, supra, which stated what should have been done by the defendant physician to avoid the injury and that the injury that occurred was not a common occurrence when the procedure is done with a reasonable degree of care and skill.

To allow the conclusory affidavits here would completely avoid the necessity of counter evidence. Omitting any factual basis, or explicit comparison between what was done and what should have been done, or particulars describing in what manner medical standards were deviated from, a mere naked conclusion of violation would suffice. But meeting factual evidence with a bare conclusion does not create an issue of fact. In a case such as this, of medical malpractice when a motion for summary judgment is made and supported by affidavit which sets forth specific facts about the doctor's performance of the involved medical activity, the plaintiff must offer similar factual evidence in opposition in order to avoid grant of the motion. *Swindell v. St. Joseph's Hosp.*, 161 Ga. App. 290, 292 (1) (291 SE2d 1) (1982). Also, to meet the defendant's evidence on a motion for summary judgment in a malpractice case, the plaintiff's affidavit must " 'establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice.' " See *Kellos v. Sawilowsky*, 254 Ga. 4, 6 (325 SE2d 757) (1985) and *Kellos v. Sawilowsky*, 172 Ga. App. 263, 264 (1) (320 SE2d 392) (1984). The

affiant must state the particulars in which he believes the defendants were negligent. *Childs v. Christmas,* 171 Ga. App. 756, 758 (2) (320 SE2d 629) (1984).

The grant of summary judgment was proper.

*Judgment affirmed. Deen, P. J., and Benham, J., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion that the appellants' expert evidence is merely conclusory and thus legally insufficient to counter the defendants' expert evidence, some observations about the issue of informed consent are appropriate. Thus, I am also concurring specially.

The appellants asserted in their complaint that had the defendants advised them of the risks attendant to the surgery, they would not have consented to the operation. On appeal, however, the parties regrettably did not address this matter.

On the numerous occasions this court has considered the doctrine of informed consent and the Georgia Medical Consent Law (OCGA § 31-9-6), it has adhered to its original statutory construction holding that there is no duty to disclose the risks of treatment, *notwithstanding the fact that all other states hold otherwise.* See *Simpson v. Dickson,* 167 Ga. App. 344 (306 SE2d 404) (1983), and Smith, "Ga.'s Medical Consent Law," 21 Ga. State Bar J. 138 (1985). Were this issue properly presented to this court now for review, this writer would propose reconsideration of this court's previous statutory interpretation and adoption of the majority rule of requiring informed consent. This would seem to have merit as medicine, at best, is an *inexact science* (the same applies to law). *Blount v. Moore,* 159 Ga. App. 80 (282 SE2d 720) (1981). It is "experimental." *Bennett v. Ware,* 4 Ga. App. 293, 299 (61 SE 546) (1908).

The mutual benefits derivable from a disclosure of the risks of treatment would seem to make such a requirement humane, fair, and logical. Physicians, like lawyers and other professionals,[1] are not incapable of error; yet physicians, under our present interpretation of the

---

[1] Although no codification of a standard for the legal profession similar to the medical consent law applicable to surgery has yet appeared, perhaps the situation in the legal profession most analogous to that of disclosure of risks of treatment would be the matter of litigation. "Informed consent about each critical decision in a case and the method of pursuing the litigation is clearly vital to clients. . . ." Salomon, "Professionalism: Should There Be Limits on Lawyer Zeal?" *The National Law Journal,* 17, 21 (July 21, 1986). In particular, in almost every case in the future, advising a client of the risks of litigation with regard to costs and damages for abusive litigation may be especially appropriate. See *Yost v. Torok,* 256 Ga. 92 (344 SE2d 414) (1986), and compare OCGA § 9-15-14 and OCGA § 5-6-35 (House Bill 1146) effective July 1, 1986. Note also Court of Appeals Rule 26 (b) and Supreme Court Rule 14, as well as OCGA § 5-6-6 relating to frivolous appeals.

law, are allowed to control a patient's "decision" about treatment through the nondisclosure of risks. Sometimes a patient may have no good option, but what meager measure of dignity is afforded a person who is not even allowed to make the choice? By what legal or moral right have physicians been anointed masters of the choice? One may not intelligently exercise his fundamental right of controlling his own body without being apprised of up-to-date medical information as to possible major and minor risks involved and other viable alternatives to surgery. An informed patient has the benefit and peace of being allowed to decide for himself what treatment is in his best interest, and a physician who has fully disclosed the risks of treatment has decreased his risks of liability. More information is better than less information for both patient and doctor, particularly where precision in making major decisions about surgical incisions is concerned. Nevertheless, under our renegade case law, even in this modern enlightened and "informed" age, a patient (and perhaps the surgeon) still operates and walks in the dark when it comes to deciding what available treatment is appropriate or most desirable.

An undercurrent of dissatisfaction with the current status of the law is perceptible in *Simpson v. Dickson*, supra, which followed the previous decisions on this issue out of stare decisis and hinted that the solution now might be legislative. In that instance, this court was wrong to hide behind the protective shield of stare decisis and merely invoke the prospect of salvation by legislation. We created the monster, and should not shut our eyes, grit our teeth and pray that someone else slay it for us. "[I]t has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it." *City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 733 (13 SE 252) (1891). "[S]tability must give way to justice. . . ." *Hall v. Hopper*, 234 Ga. 625, 632 (216 SE2d 839) (1975).

No obstacle other than the reluctance to accept responsibility for its own error prevents this court from matching a wrong with a remedy. The Supreme Court has never ruled on the issue. In *Robinson v. Parrish*, 251 Ga. 496 (306 SE2d 922) (1983), in holding that disclosure of risks was not required under the Georgia Voluntary Sterilization Act, the Supreme Court noted this court's long-standing rule of nondisclosure under the Georgia Medical Consent Law; however, the general doctrine of informed consent obviously was not before or addressed by the Supreme Court in that case.

DECIDED JULY 8, 1986 —
REHEARING DENIED JULY 23, 1986 — 

*Alford Wall, Douglas T. Noonan*, for appellants.

W. H. Duckworth, Jr., Penelope B. Rundle, Frederick N. Gleaton, Michael Frick, Laurie E. Demorest, for appellees.