72641. CRAFT v. WILCOX.
(348 SE2d 894)

POPE, Judge.

Plaintiff Milton Craft, Jr. appeals from the grant of summary judgment in favor of the defendant physician Robert Wilcox, M.D. in this medical malpractice action.

In June of 1981 Craft was hospitalized for hemorrhoid surgery, and while there his treating physician called in Dr. Wilcox for a consultation concerning some additional urological problems Craft was experiencing. Dr. Wilcox, a urologist, examined Craft on June 2 and 3, 1981, ordered several tests to be performed and prescribed some medication to treat his initial diagnosis of recurring subacute prostatitis.

Craft was released from the hospital on June 6 following his surgery. On June 8 he telephoned Dr. Wilcox' office "complaining of vague right scrotal pain," and, being unable to come into the office at that time, due to his past history Dr. Wilcox treated him for an infection (epididymitis) with two different medications prescribed by telephone. Craft called again on June 12, stating that he was not better, and Dr. Wilcox changed his prescriptions again. Dr. Wilcox next saw Craft in the office of Craft's primary physician where he examined him and continued him on the same medications. On June 18 Craft called Dr. Wilcox again, still complaining of pain, and was admitted to the hospital "primarily for intravenous antibiotic treatment and possible epididymectomy and exploration for possible tumor as well as possible torsion, although at this time torsion was not thought to be a likely diagnosis." After a testicular scan and other tests were performed, however, it was revealed that Craft had a "cold" or infarcted testicle which should be removed to save the other testicle. Failure to treat this condition within a twelve-hour period results in the functional loss of the testicle. Craft was "quite upset," and when he insisted on checking out of the hospital Dr. Wilcox advised him to see a urologist immediately as he did not expect the condition to improve. Dr. Wilcox had no further contact with Craft after June 19, 1981.

Craft filed suit alleging that Dr. Wilcox had failed to properly examine, diagnose and treat him in a timely manner, and as a direct and proximate cause thereof his condition went untreated and he lost one of his testicles and his reproductive abilities. Dr. Wilcox denied the allegations and filed a motion for summary judgment based upon his own affidavit and deposition in which he stated that the symptoms of epididymitis and testicular torsion are similar, but that the former is common in adult males while the latter is extremely rare in persons of Craft's age group (31 years); that based upon Craft's age, history of recurring prostatitis and the symptoms reported to him on the telephone, he diagnosed epididymitis; that even after a physical examination was performed he still diagnosed epididymitis until the testicular scan revealed torsion; and that assuming Craft's other testicle was normal, the removal of the infarcted testicle would have no effect on his reproductive capability. Dr. Wilcox averred that in all the care and treatment he rendered to Craft, he possessed and exercised the requisite degree of skill and care, and that no act or omission on his part caused or contributed to the injuries complained of.

Craft filed in opposition to the motion for summary judgment the affidavit of Dr. Mark Soloway, who was qualified as an expert in the field of urology. After describing in detail Craft's medical records upon which his affidavit was based, Dr. Soloway opined that his examination of these materials indicated that the care and treatment rendered to Craft by Dr. Wilcox "failed to come within the generally

acceptable standard of care used in similar circumstances and under like conditions." Specifically, Dr. Soloway concluded that Dr. Wilcox "failed to come within the generally acceptable standard of care, skill and diligence exercised by the medical community in similar circumstances in that (but not limited to the fact that) Dr. Wilcox, when telephonically confronted with patient complaints of acute scrotal and abdominal pain and discomfort, undertook to diagnose and provide care and treatment solely over the telephone without insisting that a physical examination be held. As a result, an incorrect diagnosis was made and a course of treatment was undertaken based on this incorrect diagnosis without the patient being examined or scheduled for examination. In light of Mr. Craft's complaints of severe pain localized to his scrotum, an attempt to reach a correct diagnosis of his condition must include a physical examination and any necessary supportive laboratory or radiologic studies indicated."

The record before the trial court consisted of Dr. Wilcox' motion, affidavit and deposition, and the affidavit of Dr. Soloway with the attachments thereto. The court found that there was no genuine issue as to any material fact; that while the affidavit of Craft's expert appeared to create a question of fact as to the appropriate standard of care, it was silent as to the issue of causation; and that the unrebutted testimony on that issue established in Dr. Wilcox' affidavit was that even if his care was substandard as delineated in Dr. Soloway's affidavit, no act or omission on Dr. Wilcox' part caused or contributed to Craft's claimed injuries. Therefore, the court ruled that Dr. Wilcox was entitled to judgment in his favor. *Held*:

In his affidavit Dr. Wilcox admitted that his diagnosis of Craft's ailment as epididymitis was incorrect. Both he and Dr. Soloway agreed that the most ultimately accurate method of distinguishing between epididymitis and testicular torsion consists of a physical examination and confirmatory diagnostic testing. However, Dr. Wilcox testified in his deposition that on June 8 he eliminated a diagnosis of torsion based on the symptoms related by Craft in his telephone conversation and his knowledge of Craft's age and history, even though those symptoms were indicative of torsion. Dr. Wilcox also admitted that if the necessary treatment for torsion is not instituted within twelve hours after the onset of the condition, "the testicle is probably going to be lost." When he finally ran a testicular scan "to rule out torsion," as expressed in his affidavit, and the test revealed a dead testicle, Dr. Wilcox then concluded that Craft had suffered testicular torsion. At that time, however, the damage was irreparable and the treatment advocated was "primarily to save the opposite testicle." In our view, the record therefore indicates a strong probability not only that Craft suffered significant pain as a result of Dr. Wilcox' failure to test for and diagnose the torsion, but that the loss of the functional

use of Craft's right testicle was also proximately caused by this misdiagnosis. Thus Dr. Wilcox' credibility in making a judgment as to causation was disputed by Dr. Soloway's contradictory standard of care opinion, as well as by Dr. Wilcox' own statements that even though Craft's problem was "not easily resolved at any time" his post-hospital treatment was based solely on symptoms described over the telephone, which raised questions of fact in regard to the conclusions contained in his affidavit that these were standard procedures of care and treatment in the medical profession and no act or omission on his part contributed to Craft's condition.

" '(T)o avoid summary judgment a plaintiff in a malpractice action must counter a defendant's expert affidavit with a contrary expert opinion. [Cit.]' . . . 'The party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence.' [Cit.] '(T)he facts in the record (were) sufficient to meet the legal standard embodied in the magic words. It is asking too much of an expert witness to expect him to state point-blank about a professional colleague, "He was negligent." (Cit.)' [Cit.] The plaintiff's expert created a factual question as to whether the damage was caused by the [defendant's] alleged negligence and that is all that was required. Furthermore, summary judgments should not be granted unless it appears, without dispute, that the case could have but a single outcome after all inferences have been construed against the movant. [Cit.]" *Messex v. Lynch*, 255 Ga. 208, 209-10 (336 SE2d 755) (1985). Accord *Greene v. Fulton-DeKalb Hosp. Auth.*, 177 Ga. App. 499 (339 SE2d 770) (1986). Compare *Bushey v. Atlanta Emergency Group*, 179 Ga. App. 827 (348 SE2d 98) (1986); *McClure v. Clayton County Hosp. Auth.*, 176 Ga. App. 414 (3) (336 SE2d 268) (1985).

*Judgment reversed. McMurray, P. J., concurs. Carley, J., concurs in judgment only.*

DECIDED SEPTEMBER 3, 1986 —
REHEARING DENIED SEPTEMBER 22, 1986.

*Don C. Keenan, William J. Berg*, for appellant.
*Lawrie E. Demorest*, for appellee.