A91A0071. KIRK et al. v. ASHLEY.

(406 SE2d 82)

ANDREWS, Judge.

The Kirks appeal from the grant of defendant's motion for summary judgment in their medical malpractice action against Dr. Ashley. In the complaint's only specification of negligence, Thomas Kirk and his wife, Modena, claimed that Dr. Ashley, while performing surgery on Mr. Kirk for a hiatal hernia, lacerated his liver and severed his hepatic vein.

The evidence established that the tears during Mr. Kirk's operation at Walton County Hospital resulted in significant bleeding and Dr. Ashley halted the operation with respect to the hiatal hernia, gave him blood and transferred him to Emory University Hospital for repair of the tears. The Kirks claimed that because of Dr. Ashley's negligence, Mr. Kirk was forced to undergo subsequent hospitalizations and operations.[1]

In support of her motion for summary judgment, Dr. Ashley submitted her affidavit which outlined her professional background, described the surgery on Mr. Kirk, and explained that the tears he suffered were a common complication of hiatal hernia surgery.[2] She concluded that the tears were not caused by her negligence and that she had "exercised at least that degree of skill, care and diligence as would ordinarily be employed by members of the profession generally under similar conditions and like circumstances. . . ."

In response to the motion, the Kirks submitted Dr. Joseph Rubin's affidavit stating that he had reviewed the certified medical records of Dr. Ashley, Walton and Emory Hospitals, and that Dr. Ashley failed to use the care and skill which is employed by the profession generally. More specifically, Dr. Rubin opined that Dr. Ashley was negligent in failing to have Mr. Kirk's blood typed and cross-matched "in advance," and in not having the "ability" to repair the lacerated liver and hepatic vein once the surgical complication developed.

The trial court found that since Dr. Rubin's affidavit did not address the specific allegation of negligence in the complaint (e.g., the actual tear to the liver and vein), there was no evidence to support it. The court gave the Kirks an additional 15 days within which to "set forth the applicable specifications of negligence" and amend the deficient complaint. Thereafter, the Kirks filed an amended complaint to which they attached Dr. Rubin's affidavit and alleged that Dr. Ashley

---

[1] Since the filing of the complaint, Mr. Kirk died of traumatic injuries he sustained in a car accident.

[2] This lawsuit was filed prior to the enactment of OCGA § 9-11-9.1 and therefore it was not necessary that an expert affidavit be filed with the complaint.

had breached the standard of care as set forth therein.

After the filing of the amended complaint, Dr. Ashley submitted a second affidavit in which she addressed the propriety of her actions after the surgery complications arose.

1. Mrs. Kirk enumerates as error the trial court's grant of summary judgment regarding the allegation that Dr. Ashley negligently lacerated Mr. Kirk's liver and hepatic vein.

To avoid summary judgment a plaintiff in a malpractice action must counter a defendant's expert affidavit with a contrary expert opinion. See *McDaniel v. Hendrix*, 260 Ga. 857 (401 SE2d 260) (1991); *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45) (1978). Here, there is no evidence to contradict Dr. Ashley's statements that the tears to the liver and vein were not the result of negligence, since Dr. Rubin's affidavit does not address that point. Therefore, there is no genuine issue to be tried to a jury and the trial court's grant of summary judgment as to that contention is affirmed.

2. Mrs. Kirk asserts that the trial court erred in excluding from its consideration the paragraph of Dr. Rubin's affidavit, which stated: "In my opinion, as a direct and proximate result of Dr. Julia V. Ashley's negligence, Thomas Kirk almost died, underwent two laparotomies with associated significant morbidity, experienced unnecessary pain and suffering, and incurred unwarranted medical expenses." The trial court decided to strike the paragraph since it was conclusory and did not reference the specific records upon which the opinion was based.

The trial court applied an overly strict standard in determining that the inadequacies of this paragraph necessitated its exclusion from evidence. Although it is true that a countering expert must base his opinion upon medical records, or upon his own personal knowledge, *Loving v. Nash*, 182 Ga. App. 253 (355 SE2d 448) (1987); *Hall v. Okehi*, 194 Ga. App. 721 (391 SE2d 787) (1990), this does not mean that each paragraph must reference the records upon which the expert relies. Here, it was adequate that Dr. Rubin identified in one paragraph of the affidavit the records he had reviewed, which included records regarding Mr. Kirk's treatment subsequent to the March 1984 operation.

Similarly, the paragraph is not impermissibly conclusory, since it outlines Dr. Rubin's opinion that Dr. Ashley's negligence resulted in near death, two laparotomies, unnecessary pain and suffering, and unwarranted medical expenses.[3] Dr. Rubin's belief that these operations

---

[3] Impermissibly conclusory affidavits typically contain boilerplate language and "magic words." See *Minchey v. Zane*, 188 Ga. App. 733 (374 SE2d 225) (1988); *Connell v. Lane*, 183 Ga. App. 871 (360 SE2d 433) (1987); *Beauchamp v. Wallace*, 180 Ga. App. 554 (349 SE2d 791) (1986); *Bushey v. Atlanta Emergency Group*, 179 Ga. App. 827 (348 SE2d 98) (1986).

and costs were occasioned by Dr. Ashley is not equivalent to an impermissibly conclusory opinion that a defendant was negligent. See *Loving,* supra at 255. The trial court improperly excluded the paragraph from consideration below.

3. Mrs. Kirk contends that the trial court's determination that Dr. Rubin's affidavit was legally insufficient and its grant of summary judgment on that basis was erroneous.

There are two steps in evaluating the legal sufficiency of an expert counter-affidavit. *Connell v. Lane,* 183 Ga. App. 871 (360 SE2d 433) (1987). First, the counter-affidavit must establish "the parameters of acceptable professional conduct." *Beauchamp v. Wallace,* 180 Ga. App. 554, 555 (349 SE2d 791) (1986). Secondly, it must set forth specific facts as the basis for reaching the conclusion that treatment did not meet the standard of care. *Hillhaven Rehabilitation &c. Center v. Patterson,* 195 Ga. App. 70 (392 SE2d 557) (1990); *Bushey v. Atlanta Emergency Room Group,* 179 Ga. App. 827 (348 SE2d 98) (1986). This two-step process assures that counter-affidavits contain the particulars of negligence, instead of conclusory language. See *Connell,* supra at 872.

The first part of our inquiry is satisfied since Dr. Rubin's affidavit clearly set out the parameters of acceptable professional conduct. Dr. Ashley contends that the affidavit fails under the second part of the inquiry, since Dr. Rubin did not articulate the reason he believes that Dr. Ashley did not have "the ability" to repair the tears and since the use of the word "ability" is confusing.

Though we agree that the meaning of "ability" in this context is somewhat confusing, it is not fatal to Dr. Rubin's criticism of Dr. Ashley. On summary judgment all inferences, all ambiguities, and all doubts, are resolved against the movant and in favor of the party opposing the motion. *Jones v. Rodzewicz,* 165 Ga. App. 635, 637 (4) (302 SE2d 402) (1983). Here, construing the sentence in the light most favorable to Plaintiff, we find that Dr. Rubin created an issue of fact regarding Dr. Ashley's choices in treating Mr. Kirk when faced with complication and blood loss.[4]

Because of our decision that the stricken paragraph of Dr. Rubin's affidavit should have been considered, we find that there is also a factual issue regarding the cross-matching and typing of Mr. Kirk's blood prior to surgery. Although, in the absence of such paragraph there was no positive evidence to contradict Dr. Ashley's testimony that no harm was caused, with its inclusion such evidence exists.

---

[4] Dr. Ashley's second affidavit regarding the propriety of her actions after the complications arose does not eliminate a factual issue.

We cannot say that Dr. Rubin's affidavit is, as a matter of law, insufficient. " ' "Summary judgments should only be granted where, construing all inferences against the movant, it yet appears without dispute that the case can have but a single outcome." ' " (Emphasis deleted.) *Jackson v. Gershon*, 251 Ga. 577, 580 (308 SE2d 164) (1983). Dr. Rubin's affidavit created a jury question and the trial court's grant of summary judgment on the amended portions of the complaint was erroneous.

4. Mrs. Kirk's final enumerations of error are without merit and will not be addressed here.

*Judgment affirmed in part, reversed in part. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 3, 1991 —
REHEARING DENIED MAY 29, 1991 — 

*Cook, Noell, Tolley & Aldridge, J. Vincent Cook*, for appellants.
*Brinson, Askew & Berry, Robert M. Brinson, Don M. Jones, Mark M. J. Webb*, for appellee.