## A96A2158. BROWN v. DeKALB MEDICAL CENTER.
(482 SE2d 511)

BLACKBURN, Judge.

This medical malpractice claim by Natalie Brown, the executor of Christine Riley's estate, sought damages for injuries stemming from bedsores Riley allegedly suffered while a patient at DeKalb Medical's nursing home. The trial court directed a verdict in DeKalb's favor on the issue of punitive damages. After a jury returned a $165,000 verdict of compensatory damages for the estate, the court granted DeKalb a j.n.o.v. Riley's executor, Brown, appeals on behalf of the estate. "[I]n reviewing a [j.n.o.v.], an appellate court must view the evidence in the light most favorable to the party who secured the jury verdict." *Atlanta Obstetrics &c. v. Coleman,* 260 Ga. 569, 570 (398 SE2d 16) (1990).

In April 1992, Riley spent a month in DeKalb's "skilled nursing facility" after she suffered a stroke. On admission, she was noted to suffer from bedsores on her bottom. One day after she left the nursing home, according to Brown and to a home health care nurse who examined her, she exhibited "blood blisters" on the heels of her feet. Although the home health care nurse described these blisters as "intact" and stated they could have formed in a 24-hour period, Brown testified these sores were "open" and "bloody." Riley's expert witness, a nurse skilled in caring for and preventing pressure sores, stated that in her opinion, these sores formed while Riley was at DeKalb's nursing home. Some of the sores apparently healed, and Riley later developed other ulcerated sores on her left foot and lower left leg. In December 1992, a physician concluded that because of poor blood circulation in Riley's left leg, the ulcers, including a large ulcer on her left heel, were unlikely to heal; therefore, he amputated her left leg below the knee.

Riley's nursing expert testified as to measures which "could be taken to prevent [a patient] from developing pressure sores," including the use of a special mattress, elevation of the patient's feet, and turning the patient every two hours. She also stated the "general practice" is to inspect a patient's skin during each shift. The expert stated she was familiar with the standard of care applicable to nurses in nursing homes in preventing and treating pressure sores. Because Riley's medical records did not reflect that these measures had been consistently followed, the expert concluded, DeKalb Medical breached the standard of care in its duty to prevent and treat

Riley's pressure sores.

1. We first address the trial court's direction of judgment for DeKalb on its liability to Riley. A grant of j.n.o.v. is allowed only where there is no conflict as to any material issue and the evidence introduced, including all reasonable deductions from that evidence, is such that only one reasonable conclusion may be drawn as to the proper judgment. *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85) (1993). "Where there is 'some evidence,' or 'any evidence' supporting the respondent's assertions, disputed issues are created which are for the jury's resolution." (Citation and punctuation omitted.) *Jones v. Abel*, 209 Ga. App. 889, 890 (434 SE2d 822) (1993). To support a claim for medical malpractice, Brown was required to show: 1) the nursing home breached a duty to Riley by failing to exercise the proper degree of skill and care and 2) the breach proximately caused injury to Riley. *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (304 SE2d 922) (1983).

The trial court properly directed judgment for DeKalb as to Brown's claim for damages resulting from the bedsore on her sacral area. She presented no evidence, other than mere speculation, showing this ulcer developed while Riley was in DeKalb's care. Her expert testified this ulcer became no worse during Riley's stay at DeKalb and, therefore, DeKalb had properly cared for that ulcer. Because Brown presented no evidence to rebut the presumption that DeKalb properly treated this problem, Riley's estate could not recover for this injury. See *Slack v. Moorhead*, 152 Ga. App. 68, 71 (262 SE2d 186) (1979) (presumption that medical professionals exercise due care).

But the evidence, however slim, did create a jury question as to whether DeKalb's professional negligence caused the pressure sores on Riley's left and right heels. Although the DeKalb nurses presented circumstantial evidence that they followed the routine measures needed to prevent these pressure sores, their evidence also indicates no pressure sores were documented when Riley was discharged from the hospital. Because Riley's expert was allowed to opine, without objection, that the pressure sores developed in the hospital, the probative value of the nurses' circumstantial evidence that Riley suffered no pressure sores was for the jury. See *Thomas v. Newnan Hosp.*, 185 Ga. App. 764, 768 (365 SE2d 859) (1988) (testimony as to one's uniform and routine habit is circumstantial evidence that one complied with the habit on the day in question). This conflicting evidence allowed the jury to infer the pressure sores on Riley's heels developed while she was in DeKalb's care.

Although Riley's expert did not use the magic words, "the standard of care requires," she did state, however unartfully, the parameters of the standard of care applicable to DeKalb's treatment and the method in which DeKalb deviated from that standard. See *Jackson v.*

*Gershon*, 251 Ga. 577, 579 (308 SE2d 164) (1983); see also *Messex v. Lynch*, 255 Ga. 208 (336 SE2d 755) (1985). Riley's expert testified that patients with poor circulation such as Riley do not develop pressure sores if adequate nursing care is given. See *Kapsch v. Stowers*, 209 Ga. App. 767 (1) (434 SE2d 539) (1993) (opinion sufficient which stated a medical complication was preventable and should never occur). She stated she was familiar with the standard of care for nursing homes, and opined that based on the records she reviewed, which did not mention whether Riley's feet were examined for sores, DeKalb had breached its standard of care in preventing Riley from developing this problem. The fact that her testimony is based only on the records goes to its credibility, not its admissibility. See *Flowers v. Armstrong*, 202 Ga. App. 467, 469 (414 SE2d 672) (1991).

The DeKalb nurses testified they followed all their usual procedures and did not document any bedsores on Riley's heel because none existed. But because other witnesses contradicted the assertion that there were no bedsores on Riley's heels, the jury was entitled to reject DeKalb's testimony and to infer the records upon which the expert based her opinion indicated the actual treatment given. See *Kapsch*, supra at 769 (circumstantial evidence may be used to prove the facts on which the expert relies). Because the standard of review requires us to construe the evidence and all inferences from the evidence strongly in Brown's favor, we must conclude that the evidence allowed the jury to find Riley developed pressure sores in the nursing home, and that the expert testimony allowed the jury to find the nursing home negligently failed to prevent the sores from forming on her heel. See *Austin v. Kaufman*, 203 Ga. App. 704, 706 (417 SE2d 660) (1992).

Although the expert provided evidence which would allow the jury to infer that inadequate treatment caused these pressure sores, the jury was given no sufficient causal connection between DeKalb's medical records documentation practices and any injury. It is the inadequate provision of care, not the failure to describe in detail the care given, that is alleged to have caused Riley's bedsores. Thus, to the extent Brown claimed damages on the theory of inadequate documentation, the trial court properly directed judgment for DeKalb on that theory. See *McQuaig v. McLaughlin*, 211 Ga. App. 723, 726-727 (1) (b) (440 SE2d 499) (1994) (directed verdict proper where alleged negligence not causally related to injury); *Beatty v. Morgan*, 170 Ga. App. 661, 663 (2) (317 SE2d 662) (1984) (no causal connection shown between injury and failure to maintain records).

Based on the evidence presented, the jury could also infer that Riley's ultimate injury, the amputation of her leg, resulted from DeKalb's negligence, and that this complication was a foreseeable result of its negligence. See *Coleman*, supra at 570.

2. The trial court properly directed a verdict on the issue of punitive damages, however. The evidence Brown presented, while enough to allow the jury to find DeKalb provided negligent care, was far from the clear and convincing evidence of an entire want of care required to support a verdict for punitive damages. See *Roseberry v. Brooks*, 218 Ga. App. 202, 209-210 (4) (461 SE2d 262) (1995).

3. The trial court's order reflects that upon any reversal of its judgment in this case, DeKalb shall be entitled to a new trial. This procedure is proper pursuant to OCGA § 9-11-50 (c) (1). The trial court's reasons for its ruling included its determination that the verdict was strongly against the weight of the evidence, a proper ground for the grant of a new trial. OCGA § 5-5-21. Where, as here, the facts do not demand a verdict for either party, an appellate court will not interfere with a trial court's first grant of a new trial. *Lister v. Scriver*, 216 Ga. App. 741, 747 (2) (456 SE2d 83) (1995); OCGA § 5-5-50. Therefore, this case is reversed for a new trial on the remaining issues.

*Judgment affirmed in part, reversed in part, and remanded for new trial. Birdsong, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 28, 1997 — 

*James W. Howard,* for appellant.
*Sullivan, Hall, Booth & Smith, Timothy H. Bendin, Lyndy C. Stewart,* for appellee.