A07A0085. RICKETTS v. ADVANCED DENTAL CARE, LLC.
(646 SE2d 705)

MIKELL, Judge.

This is an appeal from the grant of summary judgment to Advanced Dental Care, LLC ("ADC"), in Otis G. Ricketts's action alleging negligence and dental malpractice. Mr. Ricketts alleges that he swallowed dental impression material while a dental assistant in

ADC's office made an impression of his removable partial denture ("partial"), that he informed the assistant, that she told him it would pass through his system, and that the material lodged in his colon, causing an obstruction requiring emergency surgery. It is undisputed that Mr. Ricketts began experiencing severe abdominal pain three to four weeks after the dental visit and underwent emergency surgery to remove a bowel obstruction. The surgeon who performed the procedure described the material as a green rubbery substance about ten centimeters in length and one and two-tenths centimeters in circumference. The substance was identified as polyvinyl siloxane ("PVS"), most likely a product known as Aquasil Deca Heavy, a dental impression material primarily used for permanent crown and bridge work. The assistant testified that she used a water soluble material known as "alginate" to perform the impression. In granting ADC's motion on Mr. Ricketts's claims that ADC breached its duty to protect him from harm by failing to use a water soluble impression material and by failing to advise him of the need to seek immediate medical attention, the trial court concluded that Mr. Ricketts's circumstantial evidence was insufficient to rebut ADC's direct evidence that the material removed from his colon was not the same material as that which he ingested in ADC's office. We disagree and reverse.

> On appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the moving party was entitled to judgment as a matter of law. This requires a de novo review of the evidence. Summary judgment is proper when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case.[1]

Viewed most favorably to Mr. Ricketts, the record shows that on February 28, 2002, he sought treatment for a painful loose tooth from William Ashley Moorman, D.M.D., the primary dentist in ADC's office in Valdosta. Mr. Ricketts was eighty-two years old and had not been to a dentist in six years. Dr. Moorman deposed that Mr. Ricketts had severe periodontal disease and that the loose tooth was hanging out of the gum. After consultation, it was decided that Dr. Moorman would extract the tooth and add a tooth to Mr. Ricketts's partial. First,

---

[1] (Citations and punctuation omitted.) *Dalton v. City of Marietta*, 280 Ga. App. 202-203 (633 SE2d 552) (2006). See also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

an impression would be taken. Dr. Moorman numbed the area around the loose tooth so that Mr. Ricketts would not experience pain while the impression was taken. According to Dr. Moorman, he instructed his assistant, Karen Kimbrough Eason, to take an alginate "pick-up" impression, called such because the impression is taken while the partial is in the patient's mouth, and the partial is "picked up" in the impression. Dr. Moorman testified that alginate must be used instead of PVS because PVS is too rigid and either the impression or the partial would be destroyed when removed from the patient's mouth. In any event, Dr. Moorman left Mr. Ricketts alone with Eason, and she took the impression.

Mr. Ricketts deposed that when Eason began the procedure, his mouth overflowed with the material, and he pointed to his throat to indicate that he was swallowing it. When he finally was able to speak, he told Eason that he had swallowed it, and she said, "No problem. . . . This stuff will pass through you." Mr. Ricketts testified that the material had set so hard that Eason had to call Dr. Moorman back in to pry it out of his mouth. On March 25, 2002, Mr. Ricketts suffered severe abdominal pain caused by a bowel obstruction that had to be surgically removed.

Dr. Moorman denied having to remove the tray from Mr. Ricketts's mouth and testified that he was never informed that Mr. Ricketts had swallowed impression material. He also testified that after the impression was removed, he extracted the loose tooth and sent the partial in the impression to the lab. Teeth were added to the partial. Mr. Ricketts returned the following week, and the other dentist in Dr. Moorman's office seated it. Dr. Moorman was not aware of any problem until Mr. Ricketts's son called to say that his father had been hospitalized. At Dr. Moorman's request, the son brought him a sample of the material that had been removed from Mr. Ricketts, and Dr. Moorman sent it for analysis to Robert V. Hare, a research scientist at Dentsply Caulk, the manufacturer of Aquasil.

Hare, who invented various Aquasil products including Aquasil Deca Heavy and Aquasil Rigid, concluded that the material was most likely Aquasil Deca Heavy. Hare "guesstimated" that the product had been on the market since 1998. Hare testified that Aquasil Deca Heavy was developed to be used primarily as a crown and bridge material but could be used to take pick-up impressions. He explained that alginate impression materials are water soluble, while PVS-based materials, like Aquasil, are not. Hare further testified that the product is mixed and dispensed by a machine, typically located close to the patient's chair. According to Eason and Dr. Moorman, PVS comes in two cylinders that are placed into an apparatus like a caulking gun.

Dr. Moorman testified that he did not use Aquasil Deca Heavy, although his partner had tried it for a short time after Mr. Ricketts's visit. Dr. Moorman also testified that alginate is a powder kept in a plastic bucket and that the impression material is made by mixing the powder with water by hand in a bowl. Mr. Ricketts testified that Eason mixed, or stirred, the material in a bowl. He did not see the material.

Eason, who graduated from a dental assistant program in 2001, worked at ADC for a year and a half, and left ADC's employ in April 2003, testified that she used alginate to perform the impression. Eason explained that the water and powder are measured and mixed in a bowl, and that the material had to be put in the tray and in the patient's mouth quickly because it "set up" fast. Eason testified that she never took an impression by herself other than an alginate impression. She further testified that alginate was kept in the lab, while PVS material was kept in the supply closet. Eason denied that Mr. Ricketts told her he had swallowed impression material. She testified that she had no difficulty removing the tray after the material set and that she did not call Dr. Moorman to assist her. Dr. Moorman testified that he takes all the impressions except for the alginates. He also testified that if Mr. Ricketts had informed him that he had swallowed impression material, he would have sent him to the emergency room for X-rays, even if the material was alginate.

Haskell Sewell, the dental technician who added teeth to Mr. Ricketts's partial and examined the substance subsequently removed from his colon, provided an affidavit in which he stated that the partial was encased in an alginate material, not PVS, when he received it from ADC; that the material removed from Mr. Ricketts's colon was not the same as the impression material that he received from ADC's office; and that in the eight years he has performed work for Dr. Moorman, the only impression material he has ever received from him on a pick-up impression is alginate.

Mr. Ricketts's expert witness, Thomas J. David, D.D.S., who has practiced dentistry for over 28 years, examined the material removed from Mr. Ricketts and testified that it was "definitely not an alginate material." Rather, it appeared to Dr. David to be a type of crown and bridge impression material that was probably not water soluble. Dr. David testified that either alginate material or a PVS material may be used for a pick-up impression and that some crown and bridge materials can be hand mixed. He opined that if Mr. Ricketts had advised Eason that he swallowed impression material, the information should have been conveyed to Dr. Moorman, who should have advised Mr. Ricketts to obtain medical care. According to Dr. David, failure to so advise the patient would be a deviation from the standard of care. He also testified that it would be very difficult, if not

impossible, for Mr. Ricketts to come in contact with the material he ingested other than in the dental office. Finally, he testified that there is a relatively short period of time between the time the patient ingests impression material and the time he or she becomes symptomatic.

The surgeon who removed Mr. Ricketts's bowel obstruction, David K. Parker, M.D., averred that he believed, within a reasonable degree of medical certainty, that the material had not been there for an extended period of time; that it was highly unlikely that an object the size and shape of the substance removed from Mr. Ricketts's colon could have remained in his intestines for an extended period without causing medical problems; and that the surgery to remove the blockage on March 25, 2002, directly resulted from Mr. Ricketts's ingestion of dental impression material on February 28, 2002.

Robert E. Dale, M.D., a gastroenterologist and an expert witness for ADC, testified that it was more likely than not that the foreign object was ingested closer to the time of the obstruction, but that it was not impossible for it to have been ingested months, or even years, earlier.

1. After reviewing the evidence, the trial court granted summary judgment to ADC, ruling that Mr. Ricketts failed to offer any direct evidence that ADC was liable for his injury and that the circumstantial evidence was insufficient to create an issue of fact because it was contravened by ADC's direct evidence. The court cited the principle that "before circumstantial evidence can have any probative value to rebut or contradict direct and positive testimony of an unimpeached witness of the alleged facts in question, such evidence must point at least more strongly to a conclusion opposite to the direct testimony."[2] The court concluded that the circumstantial evidence failed to point more strongly to a conclusion opposite the direct testimony that the substance used to make the impression was alginate.

While the principle of law is correct, we conclude that the trial court misapplied it. Moreover, the court did not consider whether the circumstantial evidence that Mr. Ricketts's bowel obstruction was caused by ADC's actions was inconsistent with ADC's direct evidence to the contrary. The rule in Georgia is that "circumstantial evidence which could be taken as inconsistent with the direct, positive testimony is sufficient to get the case to a jury."[3]

---

[2] (Citation omitted.) *Winder v. Paul Light's Buckhead Jeep Eagle Chrysler Plymouth*, 249 Ga. App. 707, 712 (3) (549 SE2d 515) (2001). Accord *Rosales v. Davis*, 260 Ga. App. 709, 712 (2) (580 SE2d 662) (2003).

[3] *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 781 (257 SE2d 186) (1979).

On motion for summary judgment, a finding of fact that may be inferred from, but is not demanded by, circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists, provided that the circumstantial evidence may be construed consistently with the direct evidence. Summary judgment is improper when circumstantial evidence is inconsistent with the direct evidence; in such a case, a jury question is created.[4]

Applying the aforementioned rules, and giving Mr. Ricketts the benefit of all favorable inferences that may be drawn from the evidence,[5] we conclude that a jury question exists on his claims that ADC, through Dr. Moorman and Eason, was negligent in using the wrong impression material and in failing to instruct him to seek emergency medical attention after he told Eason that he swallowed the impression material. Specifically, we believe that Mr. Ricketts has presented sufficient circumstantial evidence, inconsistent with ADC's direct evidence, to afford a reasonable basis for the conclusion that his bowel obstruction, which became symptomatic on March 25, 2002, was causally related to the material he ingested in Dr. Moorman's office on February 28, 2002.

[O]n the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.[6]

The distinction between direct and circumstantial evidence is critical to our analysis. As defined by Georgia law, " '[d]irect evidence' means evidence which immediately points to the question at issue[;] [while] . . . 'circumstantial evidence' means evidence which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed."[7] McCormick on Evidence explains this distinction as follows: "Direct evidence is evidence which, if believed, resolves a matter in issue. Circumstantial evidence also

---

[4] (Footnotes omitted.) *Dial v. Natalizi*, 246 Ga. App. 97, 99 (539 SE2d 617) (2000). See also *Douglas v. Gilbert*, 195 Ga. App. 796, 798 (395 SE2d 9) (1990).

[5] See *Dalton*, supra at 203.

[6] (Punctuation and footnote omitted.) *Wilson v. Allen*, 272 Ga. App. 172, 174 (2) (612 SE2d 39) (2005).

[7] OCGA § 24-1-1 (3), (4).

may be testimonial, but even if the circumstances depicted are accepted as true, additional reasoning is required to reach the desired conclusion."[8]

In the case at bar, Mr. Ricketts offered direct evidence that he swallowed dental impression material in ADC's office on the relevant date and that he had not been to the dentist in six years prior thereto. There was also direct evidence that the substance removed from his colon was not an alginate. The circumstantial evidence provided by Mr. Ricketts supports a conclusion that it was more likely than not that he swallowed the material that caused his bowel obstruction in ADC's office. The Aquasil product removed from his colon was not commercially available until 1998, at least two years after he had last consulted a dentist. Mr. Ricketts testified that Eason had difficulty removing the tray from his mouth, and Dr. Moorman testified that a PVS material sets up harder than alginate. The material was removed from his colon within weeks after the dental visit, and even ADC's own expert witness admitted during his deposition that it was more likely that the object was ingested closer to the time of the obstruction than at some earlier time. Dr. Parker opined within a reasonable degree of medical certainty that the material had not been in the colon for an extended period of time prior to surgery, and he and Dr. David both stated within a reasonable degree of medical certainty that it was likely that the material was swallowed during the dental visit.

ADC contends that Mr. Ricketts's circumstantial evidence is insufficient to rebut Eason's direct and positive testimony that she utilized alginate material to take the impression, Dr. Moorman's testimony that he had never used Aquasil Deca Heavy, although his partner had tried it for a short time after Mr. Ricketts's visit, and Sewell's testimony that the material removed from Mr. Ricketts's colon was not the same material in which his partial was encased when Sewell received it from Dr. Moorman. ADC contends, additionally, that Dr. Moorman and Sewell provided direct evidence that an alginate was used to take the impression.

ADC's argument misperceives the distinction between direct and circumstantial evidence. Sewell's affidavit is direct evidence of the fact that alginate was placed on Mr. Ricketts's partial. But it is circumstantial evidence of the type of impression material that he swallowed in ADC's office when he was alone with Eason. Moreover, as the evidence is undisputed that Dr. Moorman left the room when

---

[8] (Footnote omitted.) McCormick on Evidence, Vol. 1, § 185, p. 734 (6th ed. 2006).

Eason took the impression, his testimony concerning the type of material that was placed in Mr. Ricketts's mouth is circumstantial as well.

ADC also argues that Mr. Ricketts's own testimony that Eason mixed the material in a bowl establishes that alginate was used during the dental visit. But Dr. David testified that some crown and bridge materials that are not water soluble can be mixed by hand and that the material extracted from Mr. Ricketts's colon was definitely not an alginate. Also, Mr. Ricketts testified that he did not see the material that Eason used. Accordingly, the only direct evidence that alginate was the only material used during the dental visit is Eason's testimony. The circumstantial evidence, as recounted above, points more strongly to the conclusion that Mr. Ricketts ingested the material in ADC's office that caused his bowel obstruction. Accordingly, on the present facts, we find the circumstantial evidence supporting the inference that the material Mr. Ricketts swallowed in ADC's office was the same material removed from his colon a few weeks later is inconsistent with Eason's direct and unimpeached testimony that a different material was used and points more strongly to a conclusion opposite thereto. A jury question is created.[9]

We offer a hypothetical by way of illustration. A surgeon performs an operation on a patient's abdomen. Three weeks later, an X-ray is taken, and it reveals the presence of a surgical sponge in the patient's body. The nurses who were present in the operating room testified that they counted the sponges before and after the surgery and that no sponge was left in the patient's stomach. But the surgical sponge subsequently extracted from the patient is the same type of sponge used in the hospital. This is circumstantial evidence that the sponge was left in the patient's abdomen during surgery, and it is inconsistent with the direct and unimpeached testimony of the hospital employees they did not leave a sponge in the patient's stomach. A jury issue would be created in that case as well.

2. Finally, we hold that a jury issue remains on Mr. Ricketts's claim that ADC violated the standard of care by failing to refer him to the emergency room after he told Eason that he swallowed the impression material. In this regard, Dr. David testified that Dr. Moorman breached the standard of care by failing to advise his patient to seek follow-up medical care. Contrary to ADC's argument,

---

[9] See *Dial*, supra; *Douglas*, supra.

Dr. David's affidavit did not contain mere "conclusory pronouncements"[10] because it set forth specific facts in support of his conclusions. It was error to grant summary judgment to ADC.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 22, 2007.

*Michael S. Bennett, Sr., James T. Bennett*, for appellant.
*Reinhardt, Whitley, Wilmot, Summerlin & Pittman, Robert C. Wilmot*, for appellee.

---

[10] *Bushey v. Atlanta Emergency Group*, 179 Ga. App. 827, 829 (348 SE2d 98) (1986). Compare *Flowers v. Armstrong*, 202 Ga. App. 467, 469 (414 SE2d 672) (1992).
[1] See *Whitley v. H & S Homes*, 279 Ga. App. 877 (632 SE2d 728) (2006).
[2] See id.
[3] See id.