## S94A0776. FOX et al. v. WASHBURN et al.
(449 SE2d 513)

THOMPSON, Justice.

Plaintiffs Jerry and Jane Washburn brought this ejectment action against John and Estella Fox. Defendants answered, asserting they occupy the property under a claim of right and counterclaimed for reformation of a deed given by John Fox to the Washburns. The trial court granted plaintiffs' motion for summary judgment. We reverse.

John Fox originally owned all of the land in question. It consists of approximately 96 or 97 acres and includes a house and fenced curtilage. When the loan on the property went into arrears, Fox told the Washburns (his daughter and son-in-law) that he would transfer the land to them if they would assume his loan. According to Fox, the parties agreed that he was to have full use and enjoyment of the house and curtilage for "as long as [he] lived."

The Washburns assumed the loan and procured a lawyer to prepare a deed. Fox executed the deed without reading it. It transferred all of the land to the Washburns without any reservation whatsoever. Nevertheless, Fox continued to live in the house and subsequently married Estella Fox.

Seven years after Fox executed the deed, Jerry Washburn told Fox that he wanted him to "get ready to leave," but he did not give him a deadline. One year later, the Washburns brought this ejectment proceeding against the Foxes.

The depositions of the parties and the lawyer who prepared the deed were taken during discovery. In his deposition, Fox insisted that, prior to the transfer, he asked the Washburns if he could use the house and curtilage for as long as he lived and they said "yes." Jerry Washburn stated that he never had such an agreement with Fox; Jane Washburn was unable to remember what was said with regard to the

judge, and that the trial court unfairly hampered voir dire.

transfer of the property; Estella Fox knew nothing about the transfer. The lawyer could not recall whether he was instructed to reserve a life estate for Fox.

> 1. "Mutual mistake, in relation to reformation, means a mistake shared by, or participated in by, both parties, or a mistake common to both parties, or reciprocal to both parties; both must have labored under the same misconception in respect of the terms and conditions of a written instrument, intending at the time of the execution of the instrument to say one thing and by mistake expressing another, so that the instrument as written does not express the contract or intent of either of the parties." [Cit.]

*Lawton v. Byck*, 217 Ga. 676, 681, 682 (124 SE2d 369) (1962).

> Although the evidence as to the mistake must be clear, unequivocal and decisive [OCGA § 23-2-21 (c)], there is no rule that reformation will be denied unless the mistake be admitted by both parties.

*Ga. Farm Bureau Mut. Ins. Co. v. Wall*, 242 Ga. 176, 178 (249 SE2d 588) (1978).

Fox clearly, unequivocally and decisively averred that the parties intended for him to use and enjoy the house and curtilage for the rest of his life, but that the deed did not reflect that intention. In other words, Fox alleges that there was an actual agreement, the terms of which were left out of the deed. Cf. *Lawton v. Byck*, supra at 682. Thus, he alleges that both parties labored under the same misconception with regard to the terms and conditions of the deed.

Fox's allegation, together with the actual conduct of both parties over a period of eight years, presents questions as to the intent of the parties in entering into the agreement and Fox's credibility. These questions can only be resolved by submitting the case to a jury. *Smith v. Sandersville Production Credit Assn.*, 229 Ga. 65, 67 (189 SE2d 432) (1972). See also OCGA § 9-11-56 (c); *Colquitt County Hosp. Auth. v. Health Star*, 262 Ga. 285 (1) (417 SE2d 147) (1992). Plaintiffs are not entitled to summary judgment simply because they do not admit to a mutual mistake. *Ga. Farm Bureau Mut. Ins. Co. v. Wall*, 242 Ga. 176, supra.

2. Plaintiffs insist that Fox's failure to read the deed prevents him from seeking its reformation. We disagree.

> We recognize the rule that "equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party (who was able

to read), and fraud of the other party which consists only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no fiduciary or confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the contract." [Cits.] But . . . "We do not think that this principle should be extended to cases in which it is sought to reform written instruments on the ground of mutual mistake of fact. . . . In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto. . . . In such cases negligence of the party complaining will not defeat his right to reformation, if the other party has not been prejudiced thereby. . . . In the case at bar the [plaintiffs] will not be prejudiced by the reformation of this instrument, so as to make it speak the true contract between [them] and [Fox]. If [they] get[ ] what [they] bought, then [they] can not be hurt by reforming the instrument, so as to keep [them] from getting what [they] did not buy." [Cit.]

*Hill v. Agnew*, 199 Ga. 644, 645 (34 SE2d 702) (1945).

3. Relying upon *Day v. Tribble*, 233 Ga. 242 (2) (210 SE2d 764) (1974), plaintiffs posit that even if the deed were reformed to incorporate Fox's alleged agreement, Fox would have nothing more than a use or mere license in the house and curtilage. In *Day*, the plaintiff consented to the probate of her mother's will upon the promise of the defendant, the sole devisee of the estate, that she would be able to live in the homeplace as long as she wanted. This Court found the evidence insufficient to support the creation of a life estate because the use was terminable at will.

Unlike *Day*, the alleged reservation in this case was not for an indefinite period; it was not terminable at will. On the contrary, Fox clearly specified that the reservation was to be for as long as he lived. If Fox's allegation is deemed credible by a jury, it is sufficient to reserve a life estate in the house and curtilage. See generally OCGA § 44-6-82 (a) (estate for life may be created by express agreement of the parties). Cf. *Sands v. Union Camp Corp.*, 142 Ga. App. 271 (235 SE2d 605) (1977).

*Judgment reversed. All the Justices concur, except Benham, P. J., Fletcher and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

I fully agree with the majority that there is no rule whereby re-

formation of a written document, on the basis of mutual mistake, must be denied unless the mistake is admitted by both parties. There is, however, an established rule whereby reformation of a written document must be denied unless the mistake is shown to be mutual. OCGA §§ 23-2-30; 23-2-31. In my opinion, the evidence, when construed most favorably for appellant-defendants Mr. and Mrs. Fox, shows that no genuine issue of material fact remains as to the existence of a reformable mutual mistake. Accordingly, I must respectfully dissent to what I perceive to be the majority's erroneous reversal of the trial court's grant of summary judgment in favor of appellee-plaintiffs Mr. and Mrs. Washburn.

The majority focuses solely upon the fact that a genuine issue of material fact yet remains as to the existence of an original oral agreement between Washburn and Fox to reserve a life estate in Fox. However, the existence of that original oral agreement is ultimately immaterial, unless a genuine issue of material fact also remains as to whether, notwithstanding the statute of frauds and the parol evidence rule, the subsequent written deed given to Washburn should be reformed so as to add the reservation of a life estate in Fox. To abrogate the statute of frauds and the parol evidence rule

> would destroy the very foundation of business intercourse, and would render written contracts solemnly executed vulnerable to attack by verbal testimony. The law regards the signature of a party to a contract as evidence of his assent to the terms of that contract, and such evidence is not subject to change as conditions change or as parties might change their minds, and is of the highest quality.

*McCullough v. Kirby*, 204 Ga. 738, 744 (5) (51 SE2d 812) (1949). See also *Prince v. Friedman*, 202 Ga. 136, 138 (1) (42 SE2d 434) (1947).

It is settled law in this state that " 'a party to a contract who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as prevents him from reading.' [Cit.]" *McCullough v. Kirby*, supra at 744 (5). Thus even assuming the existence of the purported oral agreement which Washburn denies and Fox asserts, Fox clearly cannot prevail under the theory that Washburn fraudulently omitted the reservation of a life estate from the terms of the deed. Fox's own failure to read the deed precludes him from a recovery under that theory.

Fox seeks to avoid this result by asserting that the omission of the reservation of a life estate from the deed was the result of a mutual mistake.

A "mutual mistake" in an action for reformation means one

in which both parties had agreed on the terms of the contract, but by mistake of the scrivener the true terms of the agreement were not set forth. [Cit.]

*Cox v. Smith*, 244 Ga. 280, 282-283 (1) (260 SE2d 310) (1979). The deed was drafted by an attorney. Accordingly, Fox could meet his burden of proof by showing that the attorney had been instructed to reserve a life estate in Fox, but that the attorney mistakenly omitted the reservation from the deed. However, Fox makes no claim that he himself instructed the attorney to reserve the life estate. Instead, Fox relied entirely upon Washburn to have the attorney draw the deed in accord with the purported oral agreement. Fox cannot show that Washburn ever instructed the attorney to reserve a life estate and that the attorney thereafter mistakenly omitted it from the deed. Washburn denies that reservation of a life estate was ever part of the agreement and the attorney himself does not recall being instructed by Washburn to reserve a life estate. Construing this evidence most favorably for Fox, any non-fraudulent omission of a life estate from the deed would be the sole result of Washburn's unilateral mistake in failing to advise the attorney that a life estate was to be reserved. The non-fraudulent omission of a life estate would necessarily be the sole result of Washburn's unilateral mistake in this regard, since Fox relied entirely upon Washburn to advise the attorney as to the terms of the deed and made no effort himself to advise the attorney to reserve a life estate.

Thus, the undisputed evidence shows that there was no reformable mutual mistake made in the actual preparation of the deed itself. See *A. J. Concrete Pumping v. Richard O'Brien Equip. Sales*, 256 Ga. 795, 796 (1) (353 SE2d 496) (1987); *Layfield v. Sanford*, 247 Ga. 92 (274 SE2d 450) (1981); *Martin v. Heard*, 239 Ga. 816, 817 (1) (238 SE2d 899) (1977); *Gauker v. Eubanks*, 230 Ga. 893, 896 (1) (199 SE2d 771) (1973). The evidence shows, at most, a unilateral mistake on the part of Washburn in the preparation of the deed. The holding of the majority will, in effect, nullify the statute of frauds and the parol evidence rule. Under the majority's holding, any and all written instruments will now be subject to reformation so long as one party thereto asserts that, even though he elected not to read the instrument before signing it, the other party mistakenly caused terms to be omitted therefrom when it was prepared. To such a holding, I must respectfully dissent.

I am authorized to state that Presiding Justice Benham and Justice Fletcher join in this dissent.

DECIDED NOVEMBER 14, 1994.

*Bowles & Bowles, Jesse G. Bowles,* for appellants.
*Paula T. Hanington,* for appellees.