## A04A0438. TIDWELL v. BASSETT.
(611 SE2d 123)

SMITH, Presiding Judge.

This case was transferred to this court by the Georgia Supreme Court.[1] The appeal arises out of the dissolution of a medical practice; the action was brought by Wilbur B. Bassett, Jr. against Thomas Jackson Tidwell. Following a jury verdict and judgment in favor of Bassett, Tidwell appeals. The trial court's judgment directed that the real estate deed between the parties be reformed to include two lots omitted from the original deed. Tidwell complains that the trial court erred in failing to direct a verdict in his favor or grant a judgment notwithstanding the verdict because there was no "scrivener's error"; he asserts that the failure to include the omitted lots was a unilateral mistake and negligence on the part of Bassett. We conclude that the evidence was in conflict and that the trial court properly submitted the question to the jury. We therefore affirm.

Bassett is a physician practicing in Columbus. In 1991, he invited Tidwell, another physician, to join his practice. Bassett deeded to Tidwell a one-half undivided interest in three lots forming the site of the office building used for their medical practice. Bassett and Tidwell also purchased two nearby lots from a third party for use as parking for the medical practice. A loan for purchase and improvement of the property was secured by the building property and the two additional lots.

By 1995, the business relationship had deteriorated to the point that the parties resorted to litigation to dissolve the medical practice and divide its assets. That litigation continued until March 5, 1997. During depositions scheduled for that day, the parties agreed to settle their differences and entered into a "proposed settlement agreement"[2] that was drafted by Tidwell's attorney on his laptop computer. After considerable negotiation in which the terms of the settlement were altered several times, the parties agreed to a total dissolution of their business relationship. The proposed agreement provided: "Bassett to own building, and will assume all debts associated with building, and will get Tidwell released from all debts by all creditors who claim security interests in the building." The agreement also provided that Bassett would lease the property back to Tidwell, "to include all Tidwell's space and the right to park in any of the three

---

[1] The appeal was originally filed in this court. We transferred it to the Georgia Supreme Court as an appeal from an equitable resolution of a petition to reform title to land; the Supreme Court retransferred the appeal as not "involving 'title to land' " and having a merely ancillary equitable component.

[2] The "proposed" agreement is the only settlement agreement in the record, and it is attached to the joint motion for approval of settlement filed with the trial court.

parking lots."[3]

In order to effectuate the agreement, a deed transferring Tidwell's interest in the property to Bassett was prepared, along with a lease from Bassett to Tidwell for the office space and the right to park in the vacant lots. A real estate attorney in the office of Bassett's counsel prepared the deed. The legal description in the deed, however, referred only to the three lots on which the building was located, not the two lots used for parking.

According to both parties, the parking lots "were never discussed." Bassett testified, however, that he intended to assume the entire real estate debt in exchange for transfer of all the jointly-owned real property; it was his belief that the term "building" included the parking lots. He further testified that he believed "that the building and parking lot went together because that's the way the deed was drawn up before." He would not have settled the lawsuit if the parking for the building had been omitted from the transfer.

Bassett's counsel testified that his — and his client's — intent was to take ownership of all the real estate and responsibility for the outstanding debt, while Tidwell was to take the medical equipment and fixtures. Tidwell's counsel testified that he did not know the lot numbers of the property at the time and that there was no discussion about Tidwell continuing to own an interest in the parking lots or breaking down the mortgage payment to cover any continuing ownership interest.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994). "It is error to direct a verdict unless the evidence demands the particular verdict and fails to disclose any material issue for jury resolution." *Humble Oil & Refining Co. v. Mitchell*, 230 Ga. 323, 326 (197 SE2d 126) (1973) (action for reformation of deed).

> Equity may reform the deed in this case upon proper evidence. Mistake relievable in equity is some unintentional act, or omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence. This power shall be exercised with caution, and to justify it the evidence shall be clear, unequivocal, and decisive as to the mistake. For a

---

[3] The "three parking lots" referred to in the proposed settlement agreement included, in addition to the two lots at issue here, other property owned by Bassett in which Tidwell never held an interest and which is not in dispute in this appeal.

mistake to be relievable in equity by reformation, it must be mutual, or else mistake on the part of one to the contract and fraud on the part of the other. A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties.

(Citations and punctuation omitted.) *Lewis v. Williford*, 235 Ga. 558, 559 (1) (221 SE2d 14) (1975). Here, the material evidence was in conflict, and some evidence supports the jury's finding of mutual mistake and the trial court's judgment directing reformation of the deed.

Tidwell points to the testimony that the parties did not recall any mention of the parking lots, contending this constitutes an admission that Bassett did not intend to include the parking lots in the original deed. But that evidence does not demand a verdict in Tidwell's favor, as Tidwell insists.

The contemporaneously executed deed and lease, when read together, *Quintanilla v. Rathur*, 227 Ga. App. 788, 790 (1) (490 SE2d 471) (1997), contain evidence of a mutual intent to transfer *all* of Tidwell's interest in the property, including the parking lots, to Bassett. Simultaneously with execution of the deed, Tidwell leased the property back from Bassett, including the right to park on the disputed lots. Clearly, Tidwell had no need to lease back property in which he continued to own a one-half undivided interest. This portion of the lease agreement would have been completely unnecessary had the parties intended for him to retain his ownership interest in those lots.

In addition, Bassett agreed to and did assume the entire financial obligation for the loan on all five lots, including the disputed lots. He also paid the taxes and insurance on the entire property. The subsequent conduct of the parties to an agreement may be considered as evidence of their intent. See *Fox v. Washburn*, 264 Ga. 617, 618 (1) (449 SE2d 513) (1994). The relative weight of this evidence was for the jury, not the trial court or this court, to determine.

Tidwell argues that the mistake was unilateral because the deed was drafted by one of the attorneys representing Bassett. But evidence was presented that all parties participated in the negotiation of the settlement agreement and preparation of the related documents. Tidwell's agreement to a lease containing terms inconsistent with his continued ownership of the parking lots provides some evidence that the mistake was not unilateral but mutual to both parties.

Because the evidence presented a disputed question of material fact with respect to the intent of the parties, the trial court did not err

in refusing to grant Tidwell's motion for a directed verdict or judgment notwithstanding the verdict.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 3, 2005.

*Richard S. Alembik*, for appellant.

*Funderburk, Day & Lane, Joel P. Day, Bradford C. Dodds*, for appellee.