A10A0695. HALL v. HALL.
(693 SE2d 624)

ELLINGTON, Judge.

In 1999, Vivian Hall conveyed her home to her son, Henry Hall, by executing a quitclaim deed. Nine years later, Henry Hall filed this action, seeking a writ of possession. Vivian Hall filed a counterclaim, averring that the parties had agreed to reserve a life estate to her. Vivian Hall sought to eject Henry Hall, who was then in sole control of the property, and to have the quitclaim deed rescinded or reformed because it failed to reserve a life estate to her.[1] The Superior Court of Chatham County granted Henry Hall's motion for summary judgment as to Vivian Hall's counterclaim and, because Vivian Hall was no longer residing at the premises, declared the dispossessory warrant moot. For the reasons explained below, we reverse.

> Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, construing the evidence and all reasonable inferences most favorably to the nonmoving party.

(Citation and punctuation omitted.) *Gold Creek v. City of Dawsonville*, 290 Ga. App. 807, 813 (2) (660 SE2d 858) (2008); see also OCGA § 9-11-56 (c).

Viewed in the light most favorable to Vivian Hall, the record shows the following. In late 1999, Vivian Hall decided to convey the home where she had lived for approximately 50 years to her son, Henry Hall. In her affidavit submitted in opposition to Henry Hall's

---

[1] The Supreme Court of Georgia determined that "this is a dispossessory action," not an action "such as ejectment . . . in which the plaintiff asserts a presently enforceable legal title against the possession of the defendant for the purpose of recovering the land," and, as such, does not invoke that Court's appellate jurisdiction over all cases involving title to land. See Ga. Const. 1983, Art. VI, Sec. VI, Par. III (1). In addition, the Supreme Court determined that "the issue of reformation of a quitclaim deed and the resulting denial of equitable relief was merely ancillary to the resolution of the underlying issue of whether there had been a mutual mistake," and, therefore, this case does not fall within that Court's appellate jurisdiction over all equity cases. See Ga. Const. 1983, Art. VI, Sec. VI, Par. III (2).

motion for summary judgment, Vivian Hall deposed that

> [i]t was the understanding of the parties that [Vivian Hall's] conveyance of the subject property to [Henry Hall] was to include a reservation to [Vivian Hall] of a life estate in the subject property, including the full use and enjoyment of the subject property for the rest of her life. It was the understanding of the parties that in exchange for the conveyance of the subject property [Henry Hall] was to assist in caring for his mother since he lived with her. The [quitclaim deed] does not contain language which reserved a life estate unto [Vivian Hall], which was a mutual mistake of the parties to the transaction.

Vivian Hall's daughters, Gail Screen and Janet Long, also understood that Vivian Hall intended to retain the right to live in the house until she died. Screen prepared the quitclaim deed using a standard form, which conveyed to the grantee "all the right, title, interest and claim which [Vivian.Hall] has in and to" the subject property. Vivian Hall executed the deed on December 1, 1999.

For several years after the conveyance, Vivian Hall continued to live in the home and to pay household expenses. Later, the relationship between Henry Hall and his mother soured, and, in her view, he "started kicking [her] out of the house." Finally, when his mother was absent from the house, Henry Hall had the locks changed. In September 2008, Henry Hall filed a dispossessory warrant, seeking a writ of possession. In her counterclaim, Vivian Hall averred that the parties had agreed to reserve a life estate to her and that Henry Hall had promised to care for her to the end of her life. Vivian Hall sought to eject Henry Hall and to have the quitclaim deed rescinded or reformed because it failed to reserve a life estate and because her son failed to care for her. The trial court found that there was no evidence that the parties intended for Vivian Hall to retain a life estate interest in the property.

1. Vivian Hall contends that there is a jury question regarding whether a mutual mistake occurred when the parties failed to insert into the quitclaim deed language reserving a life estate, citing *Fox v. Washburn*, 264 Ga. 617 (449 SE2d 513) (1994). In that case, an owner transferred a large tract of land to his daughter and son-in-law via a deed that contained no reservation of rights. Id. The grantor continued living in the house on the parcel for eight years, after which the grantees sought to eject the grantor from the property. Id. The grantor deposed that the grantees had agreed as a condition of the conveyance that the grantor would have the right to use and enjoy the house on the parcel for the rest of his life, that the grantees

had directed a lawyer in the preparation of the deed, and that the grantor signed the deed without reading it. Id. at 617-618 (1). The Supreme Court of Georgia determined that the grantor's testimony and the parties' conduct after the conveyance presented jury questions as to whether the conveyance failed to express the parties' actual agreement because it failed to reserve a life estate. Id. at 618 (1). See OCGA § 44-6-82 (a) ("An estate for life may be created by deed or will, by express agreement of the parties, or by operation of law."). The Court held that the grantees were not entitled to summary judgment "simply because they [did] not admit to a mutual mistake." *Fox v. Washburn*, 264 Ga. at 618 (1).[2]

In considering Henry Hall's motion for summary judgment, the trial court determined that Vivian Hall's deposition testimony directly contradicted her affidavit and supported Henry Hall's contention that no agreement was made conveying a life estate that was mistakenly omitted from the quitclaim deed. During Vivian Hall's deposition, when the 82-year-old deponent had frequent difficulty hearing and understanding the taker's questions, the following colloquy occurred.

Q: What did you understand you were signing at the time? . . .

A: That [Henry Hall] was making out the deed. . . .

Q: What did you understand that the deed was going to do[;] what was the purpose?

A: Let me live there until I die. That was the verbal agreement . . . [b]etween all of us[:] . . . Janet [Long], Gail [Screen], [Henry Hall,] and me.

Q: . . . Did you ask someone whether or not this deed mentioned your ability to stay there until you die?

A: I said it [to my children].

Q: When you say it was a verbal agreement, how did your children promise you that you could live there until you die?

A: They didn't promise me. . . . I just knew they would [abide by our agreement]. . . .

---

[2] See OCGA §§ 13-5-4 ("If the consideration upon which a contract is based was given as a result of a mutual mistake of fact or of law, the contract cannot be enforced."); 23-2-21 ("A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence. . . . Mistakes may be either of law or of fact."); *Eaton Yale & Towne, Inc. v. Strickland*, 228 Ga. 430, 434 (2) (a) (185 SE2d 923) (1971) ("In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto.") (citation and punctuation omitted).

Q: [D]o you know whether or not it is possible to make a written promise to let you live in a house until you die[;] do you know whether it would have been possible to write that promise down?

A: Yes, I knew I could[,] but I didn't think I had to [since we had an agreement].

Excerpts from this testimony could be construed to signify that Vivian Hall's desire to live in the home "was merely her own expectation," as the trial court found. Viewed in context, however, this testimony could also reasonably be construed to signify that Vivian Hall expressed her willingness to convey the property only if she retained a life estate and that Henry Hall accepted the conveyance subject to that condition. Although the burden on Vivian Hall at trial will be heavy,[3] when we construe the evidence in the record and all reasonable inferences most favorably to her, as the summary judgment standard requires, we conclude that she has come forward with evidence that the parties expressly agreed that she would retain a life estate in the property. *Fox v. Washburn*, 264 Ga. at 618 (1). Because material questions of fact remain regarding whether the terms of the quitclaim deed are, by mutual mistake, contrary to the agreement of the parties, the trial court erred in granting Henry Hall's motion for summary judgment. Id.; *Ledford v. Smith*, 274 Ga. App. 714, 727-728 (4) (618 SE2d 627) (2005).

2. Given our holding in Division 1, supra, Vivian Hall's remaining claims of error are moot.

3. In light of the foregoing, Henry Hall's motion for a frivolous appeal penalty is hereby denied.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

DECIDED APRIL 6, 2010.

*Weiner, Shearouse, Weitz, Greenberg & Shawe, N. Harvey Weitz, Joshua D. Walker*, for appellant.
*Christy C. Balbo*, for appellee.

---

[3] "The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake." OCGA § 23-2-21 (c).