**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 26, 2014**

# In the Court of Appeals of Georgia

A13A1749. FIRST CHATHAM BANK v. LIBERTY CAPITAL,
    LLC. et al.

BARNES, Presiding Judge.

In this case involving a dispute over a loan purchase agreement related to the development of certain residential lots, the trial court denied summary judgment to First Chatham Bank (the "Bank") on its claim for specific performance against Liberty Capital, LLC. A central issue in the case is whether the loan purchase agreement contained a typographical error in the list of residential lot numbers covered by the agreement, entitling the Bank to equitable reformation of the agreement on the ground of mutual mistake of the parties. In moving for summary judgment, the Bank argued that the uncontroverted evidence showed that the agreement contained a typographical error resulting from a mutual mistake of the parties, but the trial court disagreed, concluding that a genuine issue of material fact

existed over the contractual terms. We agree with the trial court and therefore affirm the denial of summary judgment to the Bank.

Summary judgment is appropriate only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from a trial court's denial of summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012). "Moreover, we will affirm a trial court's denial of a motion for summary judgment if it is right for any reason." *Lowry v. Cochran*, 305 Ga. App. 240, 241 (699 SE2d 325) (2010). Guided by these principles, we turn to the record here.

The dispute in this case arises out of the financing and development of several residential lots located on Hampton Island in Liberty County, Georgia. The development of Hampton Island was facilitated by a number of interconnected corporate entities, including Hampton Island, LLC and Liberty Capital, LLC. Ronald Leventhal was the president of the company which ultimately managed Liberty Capital. In 2007, Leventhal and others sought construction companies in Savannah to build homes on Hampton Island, including Best Custom Homes, LLC ("Best

2

Custom"). Best Custom agreed to purchase several lots from Hampton Island, LLC and sought financing from the Bank for the acquisition of the lots and for the construction of homes on them (the "Acquisition Loan").

To encourage the Bank to provide the Acquisition Loan, Leventhal wrote a letter to the Bank on January 11, 2008 on behalf of Liberty Capital (the "Letter Agreement"). The subject line of the Letter Agreement stated: "Re: Sale of Lots T004, T005, T007 and TL10 (the "Lots") by Hampton Island, LLC ("Seller") to Best Custom Homes, LLC ("Purchaser"), such acquisition to be financed by a loan (the "Acquisition Loan") from First Chatham Bank ("Lender")." The Letter Agreement further provided in part:

> This letter represents Liberty Capital's commitment that if the speculative residences to be constructed on the Lots by Purchaser from the proceeds of the Acquisition Loan are for any reason not sold by the second anniversary of the Acquisition Loan closing date, Purchaser, within sixty (60) days following receipt of written demand by Lender provided within 90 days following such second anniversary, will purchase the Acquisition Loan from Lender. In connection with the consummation of the Acquisition Loan purchase by Liberty Capital, Liberty Capital shall pay to Lender a purchase price equal to the sum of the outstanding principal balance of the Acquisition Loan, plus all accrued, unpaid interest under the Acquisition Loan to the date of purchase at the contract rate and Lender will assign the Acquisition

3

Loan without recourse pursuant to such loan assignment documentation as is customary for similar loan sales and reasonably requested by Liberty Capital and its counsel. . . .

Liberty Capital, an affiliate of Seller, acknowledges that the provision of this letter agreement for the benefit of Lender constitutes a material inducement to Lender's willingness to make the Acquisition Loan to facilitate the acquisition of the Lots by Purchaser from Seller.

On the same day that Liberty Capital wrote the proposed Letter Agreement, the Bank provided a letter to Best Custom committing to provide an Acquisition Loan "[p]ending the receipt and review of the buy-back letter from Liberty Capital, LLC" (the "Commitment Letter"). However, in contrast to the Letter Agreement, the Commitment Letter identified the four lots as "Lots V4, V7, V10 and V14."

A few days later, on January 14, 2014, the parties completed the sale of the four Hampton Island lots and closed on the Acquisition Loan. Several documents were signed as part of the purchase and loan transaction, but none of them contained the same four lot numbers as either the Letter Agreement or the Commitment Letter. Specifically, Best Custom signed a document entitled "Statement of Purpose" in which it stated that the Bank had extended a loan to it for the development of four lots on Hampton Island and agreed to pay back the loan in full with 24 months. The

4

Statement of Purpose identified the four Hampton Island lots as "TL-4, TL-5, TL-9 and TL-10." In addition to signing the Statement of Purpose, Best Custom signed a commercial promissory note in favor of the Bank that similarly identified "TL04, TL05, TL09 & TL10" as security for the note, and the principals of Best Custom signed commercial loan guarantees pertaining to the debt. The "Commercial Construction Real Estate Deed to Secure Debt" signed by Best Custom in favor of the Bank also identified the lots as "TL04, TL05, TL09 & TL10." Lastly, the HUD Settlement Statement completed at the closing identified the four lots as "4, 5, 9 & 10 Hampton Island."

On January 14, 2010, the second anniversary of the closing date of the Acquisition Loan, the Bank wrote to Liberty Capital demanding the purchase of the loan as outlined in the January 11, 2008 Letter Agreement. Leventhal replied to the letter on behalf of Liberty Capital, refusing the Bank's request. On March 25, 2010, the Bank renewed its demand that Liberty Capital honor the Letter Agreement, and Liberty Capital again refused.

In January 2011, the Bank filed the instant action against multiple defendants, including Best Custom, its principals, and Liberty Capital, for breach of contract, negligent misrepresentation, and other claims relating to the Acquisition Loan. The

Bank alleged that Best Custom had breached the promissory note and its principals had breached their guarantees by failing to repay the Acquisition Loan. The Bank further alleged that Liberty Capital had breached the Letter Agreement by failing to purchase the Acquisition Loan upon proper demand and sought specific performance as a remedy.

Following discovery, the Bank moved for summary judgment against Liberty Capital, arguing that it was entitled to specific performance of the Letter Agreement as a matter of law. Liberty Capital responded that summary judgment in favor of the Bank was inappropriate for several reasons, including that Liberty Capital had only agreed in the Letter Agreement to purchase an Acquisition Loan extended by the Bank to Best Custom for the sale of "Lots T004, T005, T007 and TL10," but the Bank had ultimately extended a loan to Best Custom that did not cover the same four lots. Given the discrepancy in the lot numbers, Liberty Capital contended that it was not obligated to purchase the Acquisition Loan from the Bank.

Replying to Liberty Capital's argument regarding the discrepancy in the lot numbers, the Bank asserted that the uncontroverted evidence, including Leventhal's deposition, showed that all the parties involved in the transaction knew that Lots 4, 5, *9*, and 10 were the Hampton Island lots to be purchased by Best Custom. As a

result, the Bank argued that it was clear that the reference to "Lots T004, T005, *T007* and TL10" in the Letter Agreement was a "typographical error" resulting from a mutual mistake by the parties over the respective lot numbers that occurred during their negotiations over the loan transaction. The Bank asserted that because of the mutual mistake, the trial court ought to equitably reform the subject line of the Letter Agreement to reflect that the lots at issue were Lots 4, 5, *9*, and 10, and the Bank also amended its complaint to include a claim for equitable reformation.

After reviewing the submissions of the parties and hearing oral argument, the trial court denied the Bank's motion for summary judgment against Liberty Capital. The trial court concluded that while the record "show[ed] assent of the parties to something, it [was] not clear . . . what the parties [had] agreed to."[1] The trial court

_____

[1] Liberty Capital admitted in its answer that it had "entered into an agreement whereby [it] represented to [the Bank] that it would perform certain obligations in connection with real property in Liberty County, Georgia," but disputed its legal obligations under the agreement and whether it had breached the contractual terms as actually agreed to by the parties. An admission by a party in its answer is treated as an admission in judicio that cannot be denied unless withdrawn. See *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 500-501 (1) (748 SE2d 407) (2013). See also *Budget Rent-A-Car of Atlanta v. Webb*, 220 Ga. App. 278, 280 (1) (469 SE2d 712) (1996) (unwithdrawn admission in defendant's answer that parties had entered into rental agreement was binding admission that defendant could not deny). Based on the unwithdrawn admissions in its answer, Liberty Capital could not deny that it had entered into a contract with the Bank, but it was entitled to dispute the specific contractual terms that had been reached by the parties and thus its legal obligations

7

rejected the Bank's argument that Leventhal's deposition clarified the reason for the discrepancy in the lot numbers and instead found that there remained genuine issues of material fact as to the essential terms of the agreement reached between the Bank and Liberty Capital.

Although the trial court denied the Bank's motion for summary judgment, the court granted a certificate of immediate review. We granted the Bank's application for interlocutory appeal, and this appeal followed.

1. As an initial matter, Liberty Capital argues that this Court lacks jurisdiction over the present appeal "[b]ecause the propriety of equitable relief (reformation and specific performance) is at issue, and such relief does not automatically follow despite resolution of underlying factual and legal issues." We disagree.

It is true that the Supreme Court of Georgia has appellate jurisdiction over "[a]ll equity cases." Ga. Const.1983, Art. VI, Sec. VI, Par. III. But

> [w]hether an action is an equity case for the purpose of determining
> jurisdiction on appeal depends upon the issue raised on appeal, not upon
> how the case is styled nor upon the kinds of relief which may be sought
> by the complaint. That is, "equity cases" are those in which a substantive
> issue on appeal involves the legality or propriety of equitable relief

under the contract.

8

sought in the superior court – whether that relief was granted or denied. Cases in which the grant or denial of such relief was merely ancillary to underlying issues of law, or would have been a matter of routine once the underlying issues of law were resolved, are not "equity cases."

(Citations omitted.) *Durham v. Durham*, 291 Ga. 231, 232 (2) (728 SE2d 627) (2012). See *Beauchamp v. Knight*, 261 Ga. 608, 609 (2) (409 SE2d 208) (1991).

Here, the propriety of equitable relief is ancillary to the underlying substantive issues of contract law that are the focus of this appeal, including whether the parties made a mutual mistake in their agreement over the purchase of the Acquisition Loan. Accordingly, this Court, rather than the Supreme Court, has jurisdiction over the appeal. See *Lee v. Green Land Co.*, 272 Ga. 107, 108 (527 SE2d 204) (2000) (appeal that turns on "construction of an underlying document" does not fall within the Supreme Court's jurisdiction over "equity cases"); *Hall v. Hall*, 303 Ga. App. 434, n.1 (693 SE2d 624) (2010) (noting that Supreme Court transferred jurisdiction to this Court because "the issue of reformation . . . and the resulting denial of equitable relief was merely ancillary to the resolution of the underlying issue of whether there had been a mutual mistake").

2. As previously indicated, in denying summary judgment to the Bank, the trial court concluded that there was a genuine issue of material fact as to the lot numbers

9

and the terms covered by the agreement reached between the Bank and Liberty Capital regarding Liberty Capital's purchase of the Acquisition Loan. The Bank contends that the trial court erred in concluding that there was a genuine issue of material fact regarding the lot numbers because the uncontroverted evidence showed that the lot numbers listed in the Letter Agreement contained a typographical error resulting from the mutual mistake of the parties during their negotiations over the loan transaction. Given this evidence, the Bank contends that the trial court erred in failing to equitably reform the Letter Agreement to reflect that the lots covered by the agreement were Lots 4, 5, *9*, and 10 rather than Lots 4, 5, *7*, and 10, and in failing to grant the Bank summary judgment on its claim for specific performance. We are unpersuaded.

"A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction." (Citations and punctuation omitted.) *American Mfg. Mut. Ins. Co. v. E A Technical Svcs.*, 270 Ga. App. 883, 885 (1) (608 SE2d 275) (2004). See *Tidwell v. Bassett*, 271 Ga. App. 867, 869 (611 SE2d 123) (2005). Parole evidence may be introduced to prove the mistake,

10

see *Amin v. Guruom, Inc.*, 280 Ga. 873, 874 (635 SE2d 105) (2006), and contemporaneously executed documents as well as the subsequent conduct of the parties to the agreement can be considered as evidence of their true intent. See *Tidwell*, 271 Ga. App. at 869. However, "[t]he power to relieve mistakes [must] be exercised with caution," and the evidence of the mistake must be "clear, unequivocal, and decisive." OCGA § 23-2-21 (c). See *CS-Lakeview at Gwinnett, Inc. v. Simon Property Group, Inc.*, 283 Ga. 426, 429 (659 SE2d 359) (2008); *American Mfg. Mut. Ins. Co.*, 270 Ga. App. at 886 (1). Thus, the burden on the party attempting to prove mutual mistake is a "heavy" one. *Hall*, 303 Ga. App. at 437 (1).

In the present case, there was evidence – in the form of contemporaneously executed documents and the subsequent conduct of the parties involved in the loan transaction – from which a trier of fact could infer that the reference to Lot 7 in the Letter Agreement was a typographical error resulting from a mutual mistake of the parties. But given the fact that the evidence of mutual mistake must be "clear, unequivocal, and decisive," and in light of the summary judgment standard requiring that the evidence and all inferences drawn from it must be construed in the light most favorable to the nonmovant, we conclude that the evidence of mutual mistake was not so strong as to entitle the Bank to judgment as a matter of law on the issue.

11

The Bank did not introduce any affidavits supporting its position that the reference to Lot 7 in the Letter Agreement was a typographical error. Nor did the Bank question Leventhal, who testified in his deposition that he drafted the Letter Agreement with input from the Bank, about why there was a discrepancy in the lot numbers or about whether there had been any drafting errors. As such, there are no affidavits or deposition testimony in the record in which anyone addresses the reference to Lot 7 in the Letter Agreement, explains how it came to be inserted therein, or shows why the Acquisition Loan ultimately entered between the Bank and Best Custom covered Lot 9 rather than Lot 7.

During his deposition, Leventhal testified generally that the Letter Agreement was part of "numerous documents and agreements that flowed back and forth amongst all of [the] parties that were contemporaneous in this January 2008 transaction that comprised to and led up to the acquisition loan closing and the sale of the property." He also testified that the Letter Agreement was a material inducement to the Bank deciding to make a loan to Best Custom. At the same time, however, Leventhal testified without further explanation that there was a contract for Best Custom to acquire "Lots 4, 5, 7 and 10" that occurred in "late '07 or the first week in '08" after which he wrote the Letter Agreement to the Bank. Leventhal was

12

not questioned any further about the lot numbers in the Letter Agreement and was never asked any questions regarding the discrepancy between those lot numbers and the ones listed in the other loan documents. Thus, taken as a whole, Leventhal's deposition testimony was more confusing than clarifying with regard to whether the reference in the Letter Agreement to Lot 7 was a typographical error. Indeed, a trier of fact could conclude from Leventhal's testimony that he intended to refer to Lot 7 in the Letter Agreement but that the Bank decided to extend a loan to Best Custom for the development of a different lot.

"On summary judgment all inferences, all ambiguities, and all doubts, are resolved against the movant and in favor of the party opposing the motion," and summary judgment is appropriate only if it "appears without dispute that the case can have but a single outcome." *Kirk v. Ashley*, 199 Ga. App. 805, 807-808 (3) (406 SE2d 82) (1991). In light of the record as it currently exists (which is incomplete at best) and the "heavy" burden placed on the Bank to prove mutual mistake, the trial court did not err in finding that a genuine issue of material fact exists concerning whether the reference to Lot 7 in the Letter Agreement was a typographical error. Accordingly, because a genuine issue of material fact exists regarding the essential terms of the agreement reached between the Bank and Liberty Capital, we conclude

that the trial court committed no error in denying summary judgment to the Bank on its claim for specific performance. See generally *Hall*, 303 Ga. App. at 437 (1) (concluding that grant of summary judgment was inappropriate "[b]ecause material questions of fact remain regarding whether the terms of the quitclaim deed are, by mutual mistake, contrary to the agreement of the parties"); *Tidwell*, 271 Ga. App. at 869 (concluding that trial court committed no error in denying motion for directed verdict or judgment notwithstanding the verdict "[b]ecause the evidence presented a disputed question of material fact with respect to the intent of the parties" and thus over whether a mutual mistake had occurred).

3. In light our decision in Division 2, we need not address the Bank's remaining enumerations of error.

*Judgment affirmed. Miller, J. concurs. Ray, J. concurs in judgment only.*