**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 5, 2022**

# In the Court of Appeals of Georgia

A22A0447. ROME GRANITE, INC., et al. v. PINNACLE BANK.

HODGES, Judge.

Pinnacle Bank sued Rome Granite, Inc., David A. Giannoni, and Giannoni Granite Sales & Equipment, LLC (collectively, "Defendants") seeking, among other things, equitable reformation of a security deed, modifications of that deed, and a deed under power based on an allegation that, due to a mutual mistake of the Bank and Rome Granite, the documents did not accurately reflect the collateral that should have been secured.[1] The parties all agree that two tracts of land were never secured as collateral or foreclosed upon following Rome Granite's default, but disagree as to whether the parties intended to secure these tracts. The parties each moved for

---

[1] The Bank also brought claims for unjust enrichment, equitable subrogation, constructive trust, tortious interference with contract, voidable transaction, attorney fees, and punitive damages.

summary judgment, with the Bank seeking summary judgment on its reformation claim and Defendants' counterclaims, and Defendants seeking summary judgment as to all of the Bank's claims. The trial court granted summary judgment to the Bank on its reformation claim and Defendants' counterclaims and denied Defendants' cross-motion for summary judgment as to all of the Bank's claims.

Defendants now appeal the trial court's order granting summary judgment to the Bank on its reformation claim and the denial of their cross-motion for summary judgment on the issue of mutual mistake. We agree that the Bank failed to meet its burden to establish a mutual mistake justifying equitable reformation; thus, we reverse the grant of summary judgment to the Bank on its reformation claim. Furthermore, we reverse the denial of Defendants' summary judgment motion concerning the Bank's reformation and declaratory judgment claims (Counts I and II), and we remand the case with direction for the trial court to grant Defendants' cross-

motion for summary judgment as to those claims.[2] We affirm the denial of

Defendants' cross-motion for summary judgment as to the Bank's remaining claims.

> Summary judgment is appropriate if the pleadings and the undisputed evidence show that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, the appellate courts conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party.

---

[2] These two claims concern the Bank's ability to equitably reform the security documents to include Tracts 6 and 7 due to mutual mistake, which is the only legal claim for which Defendants have advanced argument as to the merits of the underlying claims. In their brief, Defendants purport to appeal the grant of summary judgment as to their counterclaims, the denial of summary judgment on the merits of the Bank's other claims, and the trial court's denial of their motion to supplement the record with the proposed summary judgment orders they submitted. Defendants, however, enumerate no error and make no argument in their briefs concerning their counterclaims, the merits of the Bank's other claims, or the denial of the motion to supplement. Those arguments are deemed abandoned. See *In re Estate of Reece*, 360 Ga. App. 364, 365, n. 1 (861 SE2d 169) (2021) ("In its brief, the Estate purports to appeal the denial of the motion for summary judgment. This enumeration is identified but never mentioned again in the brief, and thus it is abandoned. Court of Appeals Rule 25 (c) (2)."). Accordingly, we will not review the propriety of those actions of the trial court which are now the law of the case. As a result, to the extent it is even procedurally proper, the Bank's "motion to dismiss" Defendants' counterclaims is moot.

*Bank of N. Ga. v. Windermere Dev., Inc.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

So viewed, the evidence shows that in 2012, Rome Granite and David A. Giannoni (collectively the "Rome Defendants") consolidated several debts with the Bank into a single debt secured by commercial land located at two addresses, including 1177 Ruckersville Road in Elberton. The parties executed a deed to secure debt which contained the legal description for five tracts of land. Shortly thereafter, the Bank quitclaimed two of the tracts back to Rome Granite, leaving three tracts secured as collateral.[3] Not included in the description of the property secured were two tracts, called Tracts 6 and 7 by the parties, which were obtained by Rome Granite in 2004, after the inception of its relationship with the Bank. Eventually, Rome Granite built a loading dock on the property which spanned Tracts 3, 6, and 7. In 2015 and again in 2016, the security deed was modified, but no additional changes were made to the secured collateral.

Rome Granite defaulted on its obligations to the Bank, and the Bank conducted a nonjudicial foreclosure of the secured land in 2019 pursuant to a deed under power.

_____

[3] The three remaining tracts were initially referred to as Tracts 3, 4, and 5, but in later documents were referred to as Tracts 1, 2, and 3.

The Bank purchased the property at the foreclosure sale. In the year following the foreclosure sale, all parties acted as if the Bank had foreclosed upon all of the land previously owned by Rome Granite, including Tracts 6 and 7. Rome Granite's owner, Giannoni, testified that he believed the Bank took all of the land and did not realize that the Bank did not have a security interest in Tracts 6 and 7. The Rome Defendants learned that those tracts were not included in the foreclosure sale when they were informed by the county tax assessor in 2020 that Rome Granite still owned the land. After this discovery, Rome Granite quitclaimed its interest in Tracts 6 and 7 to Giannoni Granite Sales & Equipment, LLC.

In response to learning that it did not own Tracts 6 and 7, the Bank filed a verified complaint and brought the following claims: (1) request to equitably reform the security deed, modifications to the security deed, and deed under power to include Tracts 6 and 7 in the property secured as collateral on the basis that they were excluded due to the mutual mistake of the parties; (2) to obtain a declaration that the security documents included Tracts 6 and 7 and that the transfer of title by Rome Granite to Giannoni Granite & Equipment, LLC was ineffective; (3) unjust enrichment; (4) equitable subrogation if the security documents are not reformed; (5) constructive trust; (6) tortious interference with contract for Rome Granite

5

quitclaiming its interest; (7) voidable transaction concerning the quitclaiming of Rome Granite's interest; and (8) attorney fees and punitive damages. Defendants answered and counterclaimed asserting numerous claims against the Bank. The Bank moved for summary judgment as to its reformation claim and as to Defendants' counterclaims. Defendants filed a cross-motion for summary judgment as to all of the Bank's claims. The trial court granted the Bank's motion and denied Defendants' cross-motion, and this appeal followed.

1. In two related enumerations of error, Defendants contend that the trial court erred in granting the Bank's motion for summary judgment on its reformation claim, and denying its motion for summary judgment on that claim, by finding that the reason Tracts 6 and 7 were excluded as secured collateral was due to a mutual mistake of the parties such that the security documents could be reformed. We agree.

Georgia law provides that "[a] mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence" and that "[t]he power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake." OCGA § 23-2-21 (a), (c). "[T]he burden on the party attempting to prove mutual mistake is a heavy one." (Citation and punctuation omitted.) *First*

6

*Chatham Bank v. Liberty Capital, LLC*, 325 Ga. App. 821, 827 (2) (755 SE2d 219) (2014) (physical precedent only). More specifically,

> [t]o authorize reformation of an instrument, the burden of proof is on the [Bank] to show by clear, unequivocal and decisive evidence that both [Rome Granite] and [the Bank] made a mutual mistake in preparation of the instrument and that the [Bank] was not so negligent in executing the instrument or in discovering any mistake appearing therein as to be estopped to ask for reformation. A "mutual mistake" in an action for reformation means one in which both parties had agreed on the terms of the contract, but by mistake of the scrivener the true terms of the agreement were not set forth.

*Cox v. Smith*, 244 Ga. 280, 282-283 (1) (260 SE2d 310) (1979); see also *Black v. Nationstar Mortgage, LLC*, 344 Ga. App. 217, 221 (a) (809 SE2d 487) (2018) ("A mutual mistake in an action for reformation means one in which both parties had agreed on the terms of the contract, but by mistake[,] the true terms of the agreement were not set forth. In other words, it is the parties to the original instrument that must be mutually mistaken for reformation to occur.") (citation and punctuation omitted). "There is an exception that permits the grant of relief even in cases of negligence when the other party has not been prejudiced." *Haffner v. Davis*, 290 Ga. 753, 756 (3) (725 SE2d 286) (2012).

Here, there is conflicting evidence as to the intention of the parties and the Bank has not met its "heavy" burden of establishing by "clear, unequivocal, and decisive" evidence that the parties intended Tracts 6 and 7 to be included in the secured collateral for the 2012 security deed, subsequent modifications, or related deed under power. There is evidence that the parties intended Tracts 6 and 7 to be part of the secured collateral, including: testimony from the Bank's loan officer and senior vice president that they believed in 2012 that all of Rome Granite's property had been secured as collateral for the loan consolidation ; the fact that the property's loading dock spans three tracts which include Tracts 6 and 7 ; the fact that Tracts 6 and 7 are located at the street address mentioned in the security documents ; the fact that Tracts 6 and 7 are included in the property insured by Rome Granite for which the Bank is listed as the mortgagee ; and David A. Giannoni's behavior and admission that he did not realize that Tracts 6 and 7 were not included in the secured collateral.

There is, however, a lack of evidence of specific discussions concerning the scope of the collateral to be secured in 2012 or thereafter, and there is evidence supporting a conclusion that the Bank did not intend to include Tracts 6 and 7 in the secured collateral. As to the first point, there is no testimony that the Bank specifically informed the Rome Defendants that it intended or sought to take a

security interest in Tracts 6 and 7. The Bank's loan officer testified that he had no specific discussions with the Rome Defendants about the property to be subject to the security deed and the Bank's president had no recollection of any such discussions with the Rome Defendants. David A. Giannoni deposed that no one mentioned including Tracts 6 and 7, that he signed what the Bank handed him without understanding what property was identified on the security deed, and that he did not give much thought to the scope of the property secured. The testimony, instead, demonstrates that the legal descriptions contained on the security deed, modifications, and deed under power were simply the same descriptions contained on prior security deeds between the Bank and Rome Granite which continued to be carried forward. Rome Granite did not obtain any additional financing from the Bank in 2012; it merely consolidated pre-existing debt. The appraisal commissioned by the Bank in 2012 for the loan consolidation includes information for the other tracts that were properly secured by the deed, but not Tracts 6 or 7. Also, the title insurance policy obtained by the Bank in 2012 covers the secured collateral, but not Tracts 6 or 7.

In light of the missing and conflicting evidence, the Bank cannot establish clearly, unequivocally, and decisively that Tracts 6 and 7 were excluded due to mutual mistake, and thus, the Bank is not entitled to summary judgment on its

reformation claim; instead, Defendants are entitled to summary judgment on the Bank's reformation and related declaratory judgment claim, all of which encompass the same legal issue. See OCGA § 23-2-21 (c); *First Chatham Bank*, 325 Ga. App. at 827 (2) (finding that a bank was not entitled to summary judgment on reformation claim when there was a lack of evidence that reference to a certain land lot was actually a typographical or drafting error and how it came to be that a different lot was identified instead); compare *Curry v. Curry*, 267 Ga. 66, 67-68 (1) (473 SE2d 760) (1996) (finding a mutual mistake which authorized reformation when the record showed both parties intended conveyance of a lot with a home on it instead of an empty lot because the grantor told her attorney that she wanted to convey the lot with the home to the grantee, the grantee and grantor told family members she transferred the lot with the home to the grantee, the grantee and grantor discussed the boundaries of the lot, and the grantee cleared the area for further construction); compare also *Nationstar Mortgage*, 344 Ga. App. at 221 (a) (permitting modification because the bank met the burden of proving mutual mistake when the parties mistakenly only secured one of two tracts, modified the security deed to contain both tracts, but then mistakenly only identified one of the tracts in the deed under power and special warranty deed).

10

2. Defendants argue that all of the Bank's claims are barred by laches. We find that Defendants failed to preserve this argument.

Defendants moved for summary judgment below on several grounds, but laches was not one of them, and they cannot assert it as a basis to prevail for the first time on appeal.

> Our appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.

(Citation and punctuation omitted.) *Wilson v. 72 Riverside Investments*, 277 Ga. App. 312, 314 (2) (626 SE2d 521) (2006). Accordingly, this enumeration provides no basis for reversal.

3. Defendants also contend that res judicata precludes the Bank's claims. We disagree.

Although Defendants do not argue the merits of any of the Bank's other claims in their brief, they argue that the entire case is precluded by res judicata.

11

Res judicata in Georgia began as a common law rule, and [the Supreme Court of Georgia has] held that OCGA § 9-12-40 is a codification of Georgia's basic common law rule of res judicata. OCGA § 9-12-40 provides: A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

(Citation omitted.) *Coen v. CDC Software Corp.*, 304 Ga. 105, 107 (2) (816 SE2d 670) (2018). Our Supreme Court has further specified that "three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction. 'Cause of action,' in turn, is the entire set of facts which give[s] rise to an enforceable claim." (Citation and punctuation omitted.) Id. at 112 (2). "Where some of the operative facts necessary to the causes of action are different in the two cases, the later suit is not upon the same cause as the former, although the subject matter may be the same, and even though the causes arose out of the same transaction." (Citations and punctuation omitted.) *Haley v. Regions Bank*, 277 Ga. 85, 91 (2) (586 SE2d 633) (2003). In other words, "[t]he fact that the causes of action may be related is not controlling; they must be the same." *Gunby v. Simon*, 277 Ga.

12

698, 699 (594 SE2d 342) (2004). Even if "the subject matter of different lawsuits may be linked factually[,]" it does not mean "that they are the same 'cause' within the meaning of OCGA § 9-12-40" because "the subject matter of the actions must be identical." (Citation and punctuation omitted.) Id. at 700. Although a party is able to do so,

> our law does not require that [plaintiff] assert every separate claim for relief that [it] may have against the defendant[s] in one single lawsuit or risk losing the claim for relief forever, as would be the case if our joinder statute provided for mandatory rather than permissive joinder. Instead, our law requires that such a plaintiff must bring every claim for relief [it] has concerning the same subject matter in one lawsuit.

(Citation omitted.) Id. at 699-700. Additionally, "[r]es judicata . . . does not require that all parties on the respective sides of litigation in both cases be identical, but only those by and against whom the defense of res judicata is invoked." (Citation and punctuation omitted.) *Waggaman v. Franklin Life Ins. Co.*, 265 Ga. 565, 566 (1) (458 SE2d 826) (1995). Moreover, "[r]es judicata is an affirmative defense which must be established by the pleader." (Citation omitted.) Id. at 565 (1).

Here, in 2019, the Bank filed an Affidavit and Petition for Repossession against Rome Granite, David A. Giannoni, South Ridge Granite Quarries, Inc., and

13

North Ridge Granite Quarries, Inc.[4] In that suit, the Bank claimed breach of a note from September 2016 between itself and Rome Granite which identifies secured collateral which included 1177 Ruckersville Road, other real property, and the furniture, fixtures and equipment owned by Rome Granite and South Ridge Granite Quarries, Inc. It claimed that the Bank had perfected its security interest in the personalty by filing UCC financing statements. It further contended that Rome Granite had defaulted on the note, which David A. Giannoni and North Ridge Granite Quarries, Inc. had personally guaranteed. The Bank also identified an August 2018 commercial line of credit extended by the Bank to Rome Granite which was also secured by South Ridge Granite Quarries, Inc.'s furniture, fixtures, and equipment, which it claimed was in default. In the lawsuit, the Bank sought a writ of possession for the secured personalty. Later that year the parties entered a settlement and forbearance agreement wherein the parties to that suit agreed to pay the Bank money for release of the secured personalty along with other terms and conditions. The settlement agreement specified that it "will not affect [the Bank's] ownership or security interest in property formerly owned by Defendants, except the equipment

---

[4] A partial copy of the lawsuit and settlement documents are attached as an exhibit to Defendants' motion for summary judgment. No party has raised any issue regarding the authenticity of these records.

14

mentioned herein." A consent judgment was entered pursuant to this agreement, and ultimately the Bank filed a satisfaction of that judgment.

Defendants claim that as a result of this lawsuit, res judicata precludes all of the Bank's claim in this case, but such is not the case. The Bank obtained its security interest in Tracts 1, 2, and 3 as a result of the same 2016 note which was at issue in the prior litigation, but that litigation only sought to recover secured personalty, not secured real property. That litigation did not concern the Bank's ownership interest in Tracts 6 and 7, which is what forms the basis of the majority of the Bank's claims in the present litigation. Nor did it concern unjust enrichment due to Rome Granite's retention of Tracts 6 and 7 or Rome Granite's transfer of title of those tracts to Giannoni Granite & Sales Equipment, LLC, the basis of the remainder of the Bank's claims. Indeed, that transfer had not occurred prior to the conclusion of the 2019 litigation. Although both suits involve related subject matter, the causes of action are not the same, and res judicata does not preclude the Bank's claims.

4. Defendants contend that the Bank cannot reform the security documents due to its failure to judicially confirm the foreclosure sale. In light of our disposition in Division 1, this enumeration is moot.

15

In summary, we reverse the trial court's grant of summary judgment to the Bank on its reformation claim. We reverse the denial of summary judgment to Defendants on the Bank's claim for reformation and related declaratory judgment claim, and remand the case with direction for the trial court to enter summary judgment in favor of Defendants on those claims. We affirm the denial of summary judgment as to the Bank's other claims as the merits of those claims were not argued in this appeal by Defendants. The grant of the Bank's motion for summary judgment as to Defendants' counterclaims remains the law of the case due to the failure of Defendants to include argument concerning those claims in this appeal.

*Judgment affirmed in part, reversed in part, and case remanded with direction. Barnes, P. J., and Brown, J., concur.*

16